Nick **REICHERT** and Vicki **Elrod,**
**Plaintiffs-Appellants-Respondents,**

v.

**WESTERN AND SOUTHERN LIFE INSURANCE COMPANY,**
**Defendant-Respondent-Appellant.**

**Nos. 12522, 12523.**

Missouri Court of Appeals,
Southern District,
Division Three.

March 8, 1983.

---

G. Weber Gilmore, Sr., Rice P. Burns, Jr., Gilmore, Gilmore & Taylor, Sikeston, for plaintiffs-appellants-respondents.

David E. Blanton, Sikeston, for defendant-respondent-appellant.

GREENE, Chief Judge.

These consolidated appeals are from a judgment entered, after jury trial, in favor of plaintiffs, Nick Reichert and Vicki Elrod, and against defendant, Western and Southern Life Insurance Company.

Plaintiffs are the son and daughter of Homer J. Reichert, deceased. On April 17, 1969, Homer procured three insurance policies from defendant. The first policy provided a $2,000 basic benefit in the event of Homer's death, with a double indemnity provision of $4,000 if his death was accidental. The second policy, in the amount of $6,000, and the third, in the amount of $5,000 were payable only in the event of the accidental death of Homer. Homer's wife, Betty, the stepmother of plaintiffs, was beneficiary under the first and second policies, and Homer's son, Nick, was beneficiary under the third. All of the policies contained an exclusion provision that accidental death benefits would not be paid if Homer's death, or the injury causing his death, "resulted from committing or attempting to commit an assault or felony."

On October 6, 1975, Homer died as a result of a gunshot wound. Betty was charged with his murder, and, after entering a plea of guilty to a charge of manslaughter, received a two-year suspended sentence. Nick Reichert was appointed administrator of his father's estate. While the estate was in probate, Betty assigned any and all claims she had in the insurance policies to Nick in his capacity as administrator. Nick listed the accident benefits payable under those two policies ($4,000 and $6,000) as assets of the estate. After hearing a petition to distribute assets, the probate court ordered distribution of those accidental death benefits to the heirs of Homer, the plaintiffs.

The defendant paid the life insurance benefits due under the first policy ($2,000), but declined to pay the accidental death benefits payable under the three policies

($4,000 + $6,000 + $5,000 = $15,000), contending that there was no coverage because Homer's death resulted from his committing or attempting to commit a felony. Plaintiffs then sued defendant.

In Count I of their petition, plaintiffs requested $4,000, the face amount of accidental death benefits due under the first policy, damages for vexatious refusal to pay, and attorney fees in the sum of $1,250. Count II requested $6,002.40, the claimed amount due as accidental death benefits under the second policy, damages for vexatious refusal to pay, and attorney fees of $1,250. Count III requested $5,003.36, as accidental death benefits due under the third policy, damages for vexatious refusal to pay, and $1,250 attorney fees. Defendant answered and denied all liability relying on the exclusion clause in the policies.

On October 8, 1979, the case was tried before a jury. The parties stipulated that the accidental death benefits payable under the three policies were $4,000, $6,000, and $5,000, respectively, provided plaintiffs sustained their burden of proof that Homer Reichert's death resulted from accidental bodily injury. The parties further stipulated that the benefits were not payable if Homer died while in the process of committing or attempting to commit a felony.

Plaintiffs presented evidence. Defendant presented as evidence the deposition of Betty Reichert given January 23, 1979, and plaintiffs, as rebuttal evidence, presented a written statement given by Betty on May 13, 1977, both detailing her version of the events leading to Homer's death. Plaintiffs and defendant filed motions for directed verdicts, which were overruled. The jury was instructed, closing arguments were made, and the case was submitted to the jury. After deliberation, the jury returned the following verdicts:

"We, the jury, find the issues in favor of the plaintiffs upon Count I of the Petition and assess their damages at $500 (stating the amount). Atty. Fees $250.

We, the jury, find the issues in favor of the plaintiffs upon Count II of the Petition and assess his [sic] damages at $700 (stating the amount). Atty. Fees $400.

We, the jury, find the issues in favor of plaintiff, Nick Reichert, upon Count III of the Petition and assess his damages at $600 (stating the amount). $350 Atty. Fees."

The record does not indicate that the verdicts were protested or questioned in any way. The trial court accepted the verdicts, but no judgment was entered.

Plaintiffs and defendant then filed motions for judgment notwithstanding the verdicts. Before the motions were ruled on, the trial judge was removed from office by order of the Supreme Court of Missouri. *In re Briggs,* 595 S.W.2d 270 (Mo. banc 1980). Judge Marshall Craig, special judge, was assigned to the case by the supreme court to act until a successor to Judge Briggs was appointed. There is nothing in the record to show that the parties ever directed Judge Craig's attention to the outstanding motions. After ninety days passed from the date of the filing of the motions, the motions were considered overruled by operation of law.

Both parties appealed. The appeals were dismissed due to the lack of entry of a judgment. *Reichert v. Western and Southern Life Insurance Company,* 603 S.W.2d 691 (Mo.App.1980).

Upon remand to the circuit court, Warren Hearnes, the judge appointed to succeed Briggs, was disqualified, and Stanley Grimm was appointed by the supreme court as special judge. In an effort to bring order out of procedural chaos, Judge Grimm, on August 7, 1981, entered a judgment. As to the claims involved here, the judgment is as follows:

"1. On Count I, Judgment is entered for plaintiffs Nick Reichert and Vicki Elrod and against defendant Western and Southern Life Insurance Company for $500 damages and $250 attorneys' fees, making a total Judgment of $750 for plaintiffs Nick Reichert and Vicki Elrod and against defendant Western and Southern Life Insurance Company.

2. On Count II, Judgment is entered for plaintiffs Nick Reichert and Vicki El-

rod and against defendant Western and Southern Life Insurance Company for $700 damages and $400 attorneys' fees, making a total Judgment of $1100 for plaintiffs Nick Reichert and Vicki Elrod and against defendant Western and Southern Life Insurance Company.

3. On Count III, Judgment is entered for plaintiff Nick Reichert and against defendant Western and Southern Life Insurance Company for $600 damages and $350 attorneys' fees, making a total Judgment of $950 for plaintiff Nick Reichert and against defendant Western and Southern Life Insurance Company."

Plaintiffs and defendant again filed motions for judgment notwithstanding the verdict, after which the trial court, on November 3, 1981, entered an order, the substance of which is as follows:

"1. As to the Motion for Judgment Notwithstanding the Verdict filed October 18, 1979, by defendant Western and Southern Life Insurance Company, said motion is overruled and denied, *except* as to paragraph 6 of the Motion for a Directed Verdict at the Close of All the Evidence, which is sustained. This Court finds that the failure to pay was not vexatious, as the defendant Western and Southern Life Insurance Company was entitled to have a jury decide whether the actions of the decedent resulting in his death were sufficient to bar payment. Those portions of the judgment awarding attorneys' fees on Count I of $250.00, on Count II of $400.00, and Count III of $350.00, are hereby set aside, so that the total judgment is reduced by the sum of $1000.00.

2. As to the Motion for Judgment Notwithstanding the Verdict or in the Alternative Motion for a New Trial filed October 18, 1979, by plaintiffs, said motion is overruled and denied. This Court finds that, at the request of plaintiffs, it erroneously submitted to the jury, Instructions 12, 14, and 16; said Instructions submit the question of vexatious refusal to pay and the allowance of damages based thereon; and the evidence in this case did not authorize such a submission. Although the verdicts returned by the jury were improper in that they referred to an award of attorneys' fees, said improper verdicts were invited by the plaintiffs through the submission of these improper Instructions and, therefore, plaintiffs cannot now complain about these verdicts. Further, if the question of vexatious refusal to pay was properly before the jury, this Court, at the request of plaintiffs, gave Instruction 17. Such Instruction was in error, as the proper Instruction would be MAI-Civil 36.10, not MAI-Civil 36.07 as tendered by plaintiffs. Again, since plaintiffs invited this error, they cannot now complain that the verdicts rendered pursuant to that Instruction were improper."

The judgments remaining after this order were for $500 on Count I and $700 on Count II to Nick Reichert and Vicki Elrod, and $600 to Nick Reichert on Count III. Plaintiffs and defendant again appealed.

Defendant contends that the trial court erred in failing to sustain its motion for a directed verdict filed at the close of all the evidence, and its motion for judgment notwithstanding the verdict because plaintiffs failed to sustain their burden of proof that Homer Reichert died as the result of an accident within the meaning, terms, and conditions of the three policies in question. The point has no merit.

Viewed in the light most favorable to the verdicts rendered in favor of plaintiffs, the evidence discloses that at the time of his death, Homer Reichert was a fifty-year-old man who had lived in the Wyatt, Missouri area all of his life. He had married twice. His first wife, Alice Gardner, had been married to Homer for 29 years, and was the mother of Nick and Vicki. During that time, Alice had known Homer to have only two or three drinks. Several witnesses, including Elgin McMikle, the coroner of Mississippi County, and W.J. Simmons, the former sheriff of Mississippi County, had known Homer for many years, and had never seen him drink any alcoholic beverage. For some reason not disclosed in the record, Homer had been incarcerated in the

"Federal Penitentiary." During his stay in prison, Homer was "saved", and became a "born-again Christian."

After Homer was released from prison, some 12 days before his death, marital problems developed between Homer and his second wife, Betty. She "still liked to go and things like this to night clubs and he didn't go along with it, and this was creating a marital problem." On October 6, 1975, at about 11 p.m., W.J. Simmons, sheriff at that time, received a telephone call and, as a result, went to Homer Reichert's residence in Wyatt, Missouri. As Simmons walked into the home, he heard a woman "crying, hollering, and screaming, 'I didn't aim to shoot him.'" The woman was Betty Reichert. When the sheriff first saw Betty, she was on her knees in the bathroom vomiting into the commode. She smelled of alcohol, and was, in the sheriff's opinion, intoxicated. The sheriff advised Betty of her rights. She made no further statements to him.

At the request of Sheriff Simmons, Norris Grissom, a deputy on October 6, 1975, went to Homer's home after the shooting and made an investigation. As a part of that investigation, Grissom observed Betty Reichert. There were no "marks or bruises or cuts or wounds" on her body, her hair was not disheveled or out of place, and her clothing "appeared to be in order."

Homer's wife, Betty, was the only person with actual knowledge of the events immediately preceding the shooting. On May 13, 1977, Betty gave a statement to the investigators hired by defendant in which she related the details of those events. She also gave a deposition on January 23, 1979 covering the same subject matter. Portions of the deposition were read into evidence by defendant. The statement was used by plaintiffs in rebuttal to combat inferences raised by the deposition testimony. Portions of the deposition and the statement were contradictory. Examples of variances in her two explanations of the events are as follows:

1. Due to it being a parole violation to have a pistol in his home or where he was working, Homer asked Betty to go to their mobile home at Kentucky Lake and get a pistol located there so they could dispose of it.

a) Betty left shortly after 1:00 p.m. and went to the mobile home, put the gun in a small overnight bag and took it back home. She got home about 7:30 or 8:00 p.m. (statement)

b) Betty had been gone for several days to the lake. She returned home about 4:30 or 5:00 p.m. (deposition)

2. Homer had threatened several times that he would have Betty killed. Then he said, "No, I will do it myself." Betty then became scared.

a) Betty went into her daughter's bedroom where the bag was that contained the pistol. Homer followed her and asked if she had gotten the pistol. She told him she had. As she started over to get the bag, Homer pushed her. She was afraid he was going to get the bag and pistol. (statement)

b) Betty went into her daughter's bedroom to get the gun to give it to Homer. She and Homer met in the hall. He was yelling and threatening her. On cross-examination, Betty, when asked, "You all were arguing and you knew the pistol was there and you wanted to get out of the house", she replied, "Yes." She said she was afraid. "I just wanted to get out of the house." (deposition)

3. a) Betty reached into the bag and got the pistol by the handle and held it in a firing position. Betty, afraid Homer was going to hurt her, fired a shot into the floor, hoping that "by firing the pistol into the floor that he would leave me alone and it would quiet down." (statement)

b) After meeting Homer in the hall (her with the gun), he grabbed or shoved her. Betty said the gun "went off. The gun went off once before he was shot.... And I don't know whether he touched me before then.... [W]hen the gun went off ... it frightened me. It was unexpected." (deposition)

4. a) When Betty fired the shot into the bedroom floor, Homer lunged at her and grabbed the gun. She had taken her finger off of the trigger. Homer was facing her and twisting her hand when the gun went off. Betty stated that the gun was fired accidentally and it was her feeling that when Homer twisted the gun, his finger caused the fatal shot to be fired. (statement)

b) After the gun discharged unexpectedly, Homer jerked Betty's arm up, grabbing her and the gun went off the second time, killing Homer. (deposition)

When quizzed about the variances in her two accounts of the events preceding Homer's death, Betty replied, "I have tried to put this out of my mind as much as possible, so there is no way that I can remember every little thing." Two years had passed from the time the statement was given and the deposition taken.

From this evidence, the question of whether Homer Reichert died as a result of an accident within the meaning, terms and conditions of the three policies was a jury issue. The trial court did not err in overruling defendant's motion for a directed verdict, or its motion for judgment notwithstanding the verdict, on the ground that plaintiffs failed to sustain their burden of proof.

**I.**

"Instruction No. 17

You are instructed that a separate verdict must be returned with respect to each count. You are further instructed that nine or more jurors may return a verdict for any party in this case. If all of you agree upon a verdict, your foreman alone will sign it, but if your verdict is returned by nine or more, and less than twelve jurors, your verdict must be signed by all of the jurors who agree to it.

Forms of Verdict

If all of you agree upon a verdict in favor of the plaintiffs upon Count I of the Petition, it may be in the following form:

'We, the jury, find the issues in favor of the plaintiffs upon Count I of the Petition and assess their damages at $____ (stating the amount).

_____Foreman.'

If all of you agree upon a verdict in favor of the defendants [sic] insrurance [sic] company and against the plaintiffs upon Count I of the Petition, it may be in the following form:

In their first two points relied on in their appeal, plaintiffs contend that the trial court erred in 1) submitting Instruction No. 17 (form of verdict) to the jury as the instruction was confusing and misleading, 2) entering judgment for damages of $500 on Count I, $700 on Count II, and $600 on Count III, because the terms of the insurance contracts and the stipulation of the parties established that the only damages which could be awarded in the event of a verdict for plaintiffs, exclusive of the question of damages and attorney fees against defendant for vexatious refusal to pay the policy benefits, were $4,000 on Count I, $6,000 on Count II, and $5,000 on Count III; so, verdicts in less than those amounts were legally impermissible, and a judgment based on such a verdict is void.

Defendant and the successor trial court agree that the submission of Instruction 17 was erroneous. Defendant contends that since the instruction was tendered to the trial court by plaintiffs, the error was invited and, therefore, plaintiffs cannot now complain about the submission of their own instruction. As to the jury verdicts, defendant contends that since plaintiffs did not complain about them prior to the time the jury was discharged, they are bound by the verdicts rendered.

Instruction No. 17, tendered by plaintiffs and given by the trial court, is MAI 36.07,[1]

'We, the jury, find the issues in favor of the defendants [sic] insurance company and against the plaintiffs upon Count I of the Petition.

_____Foreman.'

If all of you agree upon a verdict in favor of the plaintiffs upon Count II of the Petition, it may be in the following form:

'We, the jury, find the issues in favor of the plaintiffs upon Count II of the Petition and assess his [sic] damages at $____ (stating the amount).

_____Foreman.'

If all of you agree upon a verdict in favor of the defendants [sic] insurance company and against the plaintiffs upon Count II of the Petition, it may be in the following form:

'We, the jury, find the issues in favor of the defendants [sic] insurance company and against the plaintiffs upon Count II of the Petition.

_____Foreman.'

which, though now withdrawn by the supreme court, was in effect at the time of trial. This instruction was the standard verdict form instruction for use in multi-count cases at the time of trial. The giving of the instruction was improper under the facts of this case. The only recovery possible to plaintiffs, if they prevailed, was the amounts due on the three policies, interest, if any, as well as penalties and attorney fees for vexatious refusal by the insurance company to pay the policy benefits, if such a submission was justified by the facts. A form of verdict instruction to cover such situations is set out in MAI 36.10.[2]

The successor trial court correctly observed that such a verdict form should have been used. MAI 36.10 had been approved by the supreme court and, even though not effective until June 1, 1980, could and should have been used under the facts of this case.

▪ The first question to be resolved is whether the doctrine of invited error applies in the case of a mandatory instruction. It does not. The doctrine was established to prevent a party from attacking an instruction selected or devised by him which submits to the jury his *theory of substan-*

tive law on which he asks that the case be decided. *Arnel v. Roettgen,* 530 S.W.2d 20, 22–23 (Mo.App.1975). This is not the case here. The trial court was required to submit a form of verdict instruction. This duty was mandatory. See MAI pp. CXXXVI–CXXXVII, CXL–CXLI (3d ed. 1981). Errors in the giving of mandatory instructions should not be judged on the basis of who submitted the defective instruction, but rather on the basis of whether the error was prejudicial. *Arnel v. Roettgen,* supra at 23. The error in submitting Instruction No. 17 to the jury was prejudicial, as it was confusing and misleading, and resulted in an impossible verdict. The language of the insurance policy controls the amount the beneficiaries may recover. *Pierce v. Business Men's Assurance Company of America,* 333 S.W.2d 97, 100–101 (Mo.1960). Here, the insurance company pled the alleged assault by Homer on Betty as a complete defense, not as a counterclaim or set-off. The case was tried and submitted on an all or nothing theory. The jury could have found that Homer's death was accidental and that it did not occur while he was committing an assault or felony and awarded plaintiffs a total of $15,000

---

If all of you agree upon a verdict in favor of plaintiff Nick Reichert, upon Count III of the Petition, it may be in the following form:

'We, the jury, find the issues in favor of plaintiff, Nick Reichert, upon Count III of the Petition and assess his damages at $____ (stating amount).

_____Foreman.'

If all of you agree upon a verdict in favor of the defendants [sic] insurance company and against plaintiff, Nick Reichert, on Count III of the Petition, it may be in the following form:

'We, the jury, find the issues in favor of the defendants [sic] insurance company and against plaintiff, Nick Reichert on Count III of the Petition.

_____Foreman.'

If less than twelve jurors return a verdict in this case, you should begin your verdict with the words:

'We, the undersigned jurors find,' etc., instead of 'We, the jury,' etc.

These forms are given for guidance only and your verdict should be written on a separate piece of paper, and not on one of these instructions."

---

2. "[1980 Revision] Form of Verdict-Plaintiff vs. Defendant Insurance Company-Interest-Vexatious Refusal Penalty-Attorney Fees.

VERDICT

Note: Complete this form by writing in the name required by your verdict.

On the claim of plaintiff (state the name) for insurance benefits, interest, penalties and attorney fees against defendant, we, the undersigned jurors, find in favor of:

_____

(Plaintiff (state the name)) or (Defendant (state the name))

Note: Complete the following paragraph only if your verdict is in favor of plaintiff (state the name).

We, the undersigned jurors, assess the damages of plaintiff (state the name) as follows:

On the policy $____ (stating the amount).

For interest $____ (stating the amount or, if none, write the word, 'none').

For penalty $____ (stating the amount or, if none, write the word, 'none').

For attorney fees $____ (stating the amount or, if none, write the word 'none').

Note: All jurors who agree to the above findings must sign below."

as policy benefits, or it could have found that Homer's death occurred while he was committing an assault or felony and awarded plaintiffs nothing. The jury verdicts in a total of $1,800 were improper and confusing, as you cannot tell from looking at the cold record whether the jury thought they were awarding penalties for vexatious refusal to pay, or for some reason decided that Homer's death was not worth $15,000.

■ The verdicts did not award actual damages, if one chooses to call stipulated policy benefits damages, and so amounted to null verdicts. No entry of judgment on a null verdict is possible. *Thorne v. Thorne*, 350 S.W.2d 754, 758 (Mo.1961); *Jenkins v. McShane*, 539 S.W.2d 752, 754 (Mo.App. 1976). Plaintiffs' attorney did not object at the time the verdicts were returned, and did not request the trial court to direct the jury that the verdicts were improper and tell them to deliberate further and return proper verdicts. While he should have done so, this should not deprive the parties of a clear and precise determination of their rights [*Albers Milling Co. v. Carney*, 371 S.W.2d 355, 360 (Mo.App.1963); *Thorne v. Thorne*, supra at 759; *Jenkins v. McShane*, supra at 754–755], since the verdicts here are totally insufficient on their face, when viewed in the light of the facts, the stipulation and the instructions.[3]

Plaintiffs' final point is that the successor trial court erred in granting the portion of defendant's after-trial motion for judgment notwithstanding the verdict that dealt with the award of attorney fees. Since it cannot be said with certainty that the jury actually made a proper determination on the specific issue of damages (policy benefits, penalty for vexatious refusal to pay and attorney fees), we conclude that in remanding the case for a new trial, all issues must be considered. *Artstein v. Pallo*, 388 S.W.2d 877, 882 (Mo. banc 1965), and *Jenkins v. McShane*, supra at 755.

The judgment of the successor trial court, as amended by its order dated November 3,

1981, is reversed and the cause remanded for a new trial on all issues. Since plaintiffs share the blame for this procedural morass, the costs of this appeal are taxed against them.

FLANIGAN, MAUS and PREWITT, JJ., concur.

---

**3.** For an excellent discussion of this issue, see *Buus v. Stocker Oil Co.*, 625 S.W.2d 236, 239– 240 (Mo.App.1981).