**Nancy REMINGTON, a/k/a Nancy
Holland, Plaintiff–Respondent–
Appellant,**

v.

**WAL–MART STORES, INC., Defendant–
Appellant–Respondent,**

and

**Randy Edwards, Defendant–Respondent.**

**Nos. 16802, 16825.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 27, 1991.

Motion for Rehearing or Transfer
to Supreme Court Denied
Sept. 18, 1991.

Application to Transfer Denied
Nov. 19, 1991.

Richard D. Crites, Springfield, for plaintiff-respondent-appellant.

Ransom A. Ellis, III, Cynthia J. Hyde, Ellis, King, Ellis & Black, Springfield, for defendant-appellant-respondent Wal–Mart Stores, Inc., and Randy Edwards, defendant-respondent.

MAUS, Presiding Judge.

Plaintiff Nancy Remington (now Holland) (herein referred to as "Remington"),was employed as a checker by defendant Wal–Mart Stores, Inc. (Wal–Mart). The manager of the Monett store where she was employed was defendant Randy Edwards ("Edwards"). Upon her employment with Wal–Mart having been terminated, Remington filed a claim with the Missouri Division of Employment Security ("DES"). Wal–Mart filed a protest which, after a hearing, was denied. By her second amended petition in this cause, Remington sought recovery on assorted theories in five counts against Wal–Mart and Edwards by reason of such termination and protest. She prevailed upon the theory that Wal–Mart intentionally interfered with her business expectancy to receive unemployment compensation. By Verdict A, a jury awarded Remington $531.00 actual damages and $78,000.00 punitive damages against Wal–Mart. Also by that verdict, the jury found in favor of Remington and against Edwards upon submission of that theory, but assessed no damages against him. Wal–Mart appeals from the judgment

against it. The trial court granted Wal–Mart a summary judgment against Remington on Count IV seeking damages for breach of an employment contract with Wal–Mart. Remington appeals from that summary judgment. The trial court dismissed Count V against Edwards which alleged Edwards interfered with her contract of employment with Wal–Mart. The other counts were dismissed or have been abandoned and are no longer an issue.

The following is an outline of the facts necessary for consideration and disposition of the consolidated appeals. Remington was employed by Wal–Mart on May 19, 1975. At that time, she was given an Employee Handbook entitled, "Welcome to Wal–Mart Stores, Inc." and subtitled, "A Guide for Wal–Mart Associates". In early 1983, the plaintiff was experiencing difficulties with her ex-husband, Lee Remington. On one occasion, Lee Remington came to the Wal–Mart store and harassed her. Because of her problems with her ex-husband, Remington moved from Monett to Nixa.

Because of back and shoulder problems, in April of 1983 Remington sought treatment from Dr. Terry L. Phillips, a chiropractor. At Dr. Phillips' request, she was off work from April 21, 1983 through May 6, 1983. During that time, she took one week's vacation and the balance of the time she was on sick leave. She returned to work on May 7, 1983. On May 8, 1983, her ex-husband, Lee Remington, beat her up. She went to see Dr. Phillips. She did not report for scheduled work on May 10, 1983. Late that afternoon, her boyfriend, now husband, Larry Holland, called manager Edwards and said that a situation prevented Remington from coming to work on May 10 and May 11, 1983. On May 10, Dr. Phillips called Edwards and told him that Remington, because of an injury, would have to be off work from 10 days to 3 weeks. Edwards said that was "okay". Edwards testified that he talked to Dr. Phillips in April 1983, but had no memory of having talked with Dr. Phillips in May 1983.

On May 19, 1983, Remington called Wal–Mart to see if someone could pick up her check. She was informed that she had to pick up the check. She went with a friend to the store to do so. Edwards presented her with the check and a form entitled, "Associate Exit Interview". That form recited that Remington had been off work without management's knowledge for 10 days and voluntarily resigned. Remington refused to sign the form and left with the check.

The Employee Handbook contained the following provision concerning absences from work.

"Your job is important. You are needed on your job all the hours you are scheduled to work. Your attendance record is a definite factor in your continued association with Wal–Mart. Your Supervisor does recognize that there will be times when illness forces you to be away from your job. YOU ARE ADVISED THAT ANY TIME YOU ARE UNABLE TO REPORT TO WORK FOR ANY REASON, YOU ARE TO CALL AND ADVISE YOUR SUPERVISOR—OR ANOTHER MEMBER OF MANAGEMENT—BEFORE YOU ARE SCHEDULED TO REPORT TO WORK. Any time an associate fails to report to work for three (3) consecutive days without proper notification (as stated above), the Company will consider this as a voluntary resignation of your job. Your Supervisor may ask for verification of illness for excessive absenteeism." (Emphasis in original).

Based upon his perception that Remington had violated this provision by failing to notify management, Edwards completed a Notice of Separation form which recited that Remington had been absent for 10 days without notifying management and voluntarily resigned. It was upon this basis that Edwards had completed the Associate Exit Interview form.

Remington filed for unemployment compensation with DES. Wal–Mart filed a letter of protest by use of a copy of the Notice of Separation form. Wal–Mart had

no other communication with or contact with DES.

After the protest was filed and her claim was initially denied, Remington hired an attorney. After a hearing, Remington was awarded unemployment compensation. She received all unemployment benefits to which she was entitled. Her attorney's fees were $531.00.

It is Wal-Mart's basic point on appeal that Remington did not make a submissible case and that the trial court erred in not granting its motion for a directed verdict at the close of all of the evidence and in failing to grant its motion for judgment notwithstanding the verdict. That contention has merit.

By Count II, Remington alleged that Wal-Mart was liable because defendant Edwards, acting within the scope of his employment, with the specific intent to harm her, filed or caused to be filed with DES, "an untrue statement". She further alleged that as a result of this untrue statement, she was initially denied her unemployment compensation benefits. She prayed judgment against the defendants for damages "as a result of the intentional interference with business relationship and expectancy by said Defendants." Remington's position is stated in a point in her brief in the following terms.

"A claimant ... who has not been terminated for cause related to the job, cannot be disqualified from receiving such benefits, under RSMo Section 288.050, and has an absolute right to such benefits under such conditions, and an employer, who has terminated an employee without cause related to the job, has no right under RSMo Section 288.070(1) to make or submit a protest against such employee's claim in bad faith, or to make or submit a knowingly *false and incorrect protest* purely in an effort [to] defeat the claimant employee's claim for such benefits." (Emphasis added.)

The basic flaw in Remington's contention is that she fails to accord proper significance to the status of the DES as an administrative agency and to the status of the protest, or communication, filed with that agency. It is a common law principle that statements made in the course of judicial proceedings are absolutely privileged. *Henry v. Halliburton,* 690 S.W.2d 775 (Mo. banc 1985).

This principle is generally held applicable to a quasi judicial proceeding. The following is a generalization of the criteria for determining if a proceeding is a quasi judicial proceeding.

"However, the possession by the agency of such traditional judicial powers as the conducting of hearings at which witnesses may be summoned and examined, documents subpoenaed, and judgments handed down, has been referred to as supporting the conclusion that the privilege applies." (Footnote omitted.)

Annot., *Libel and slander: privilege applicable to judicial proceedings as extending to administrative proceedings,* 45 A.L.R.2d 1296, 1298–99 (1956).

The applicable principle has been summarized.

"[S]tatements made during the proceedings of a judicial or quasi judicial body are absolutely privileged if they are relevant to the issues before the body, *Ramacciotti v. Zinn,* 550 S.W.2d 217, 224 (Mo.App.1977). The National Railroad Adjustment Board is just such a body. (citation omitted)." *Barchers v. Missouri Pacific R. Co.,* 669 S.W.2d 235, 238 (Mo.App.1984).

A proceeding to determine whether or not a claimant was entitled to unemployment benefits has been held, under Kansas common law, to be a quasi judicial proceeding. *White v. United Mills Co.,* 240 Mo.App. 443, 208 S.W.2d 803 (1948).

An extended discussion of the status of DES in this respect is not required. The legislature has acknowledged that DES is a quasi judicial agency. Section 288.250, in part, provides:

"Any information obtained by the division in the administration of this law shall be privileged and no individual or type of organization shall be held liable for slander or libel on account of any such information."

Under this statute, it has been squarely held that a letter of protest filed with DES is absolutely privileged.

> "Publication of this letter to the Missouri Division of Employment Security is absolutely privileged pursuant to § 288.250 RSMo 1986 which provides 'any information obtained by the Division in the administration of this law shall be privileged and no individual or type of organization shall be held liable for slander or libel on account of such information.' *Tucker v. Delmar Cleaners, Inc.,* 637 S.W.2d 222, 224 (Mo.App.1982)." *Washington v. Thomas,* 778 S.W.2d 792, 796 (Mo.App.1989).[1]

Remington cannot evade the common law and statutory status of the letter of protest as an absolutely privileged communication by relabeling her cause of action and seeking to recover only certain described damages resulting from the filing of a false statement.

In *Dake v. Tuell,* 687 S.W.2d 191, 193 (Mo. banc 1985), it was held that plaintiffs cannot evade the employee-at-will legal principle by relabeling their cause of action a "prima facie tort". In so holding, the court declared:

> "Here, plaintiffs would have us render near impotent this long standing legal principle—by establishing a rule that would permit an at will employee to bring an action for wrongful discharge under the guise of the prima facie tort doctrine. This we decline to do." (Footnote omitted.)

The Wisconsin Supreme Court recently considered a similar problem. A Wisconsin statute barred claims for criminal conversation and alienation of affection. A plaintiff sued a defendant for "intentional infliction of emotional distress". His factual allegations were that the defendant intentionally concealed from him the fact the defendant was the biological father of a child born to the plaintiff's wife and revealed that fact only after the plaintiff had developed a bond with the child. The court held the action was barred by the aforesaid statute and was properly dismissed. In so holding, the court observed that the petition included allegations of acts which constituted criminal conversation and that the bar of the statute cannot be evaded because the plaintiff was seeking recovery under the label of "intentional infliction of emotional distress". *Koestler v. Pollard,* 162 Wis.2d 797, 471 N.W.2d 7 (1991).

The essence of Count II is that Wal–Mart published false information with DES and by reason thereof Remington seeks to recover damages in the form of "Interference with Business Expectancy". This count pleads all the facts necessary to state a cause of action in libel. Paraphrasing the sound conclusion in *Dake,* "here, Remington would have us render impotent the long standing common law and statutory principle of privilege by permitting her to bring an action for libel based upon an absolutely privileged communication under the guise of 'Interference with Business Expectancy'. This we decline to do."

 Remington contends that Wal–Mart cannot question the sufficiency of the evidence and cannot complain the trial court erred in denying its motions because Wal–Mart submitted all instructions, other than the punitive damage instruction,[2] and "has thereby invited error and is thus precluded from raising such issues". The instructions referred to included Instruction No. 7 which was a verdict directing instruction which predicated recovery upon the basis

---

1. *State ex rel. Von Hoffman Press v. Saitz,* 604 S.W.2d 770, 772 (Mo.App.1980), cited by Remington, is not, as she claims, authority to the contrary. In that case the court was considering whether or not an employer, an out-of-state vendor, had sufficient contacts with Missouri to be required to pay sales taxes. In that case, the court held the Relator could subpoena certain records. The court noted that the Relator did not wish to use the information obtained from the records of DES for the "purpose of subverting the purpose of the Employment Security Law but merely as evidence of the employment practices of certain out-of-state companies." That case in no way holds or intimates that the content of a letter of protest is not absolutely privileged in an action for libel.

2. The punitive damage instruction was in the language approved in *Burnett v. Griffith,* 769 S.W.2d 780 (Mo. banc 1989) and merely incorporated Instruction No. 7.

of intentional interference with "a valid business expectancy to receive unemployment compensation". Remington argues "(b)y this instruction, Appellant (Wal–Mart) invited the jury to find in favor of Respondent (Remington), if it believed all five of the requisite portions of the instruction." Therefore, she concludes Wal–Mart waived and is precluded from questioning the sufficiency of the evidence to support that instruction. She cites cases such as *Schisler v. Rotex Punch Co., Inc.*, 746 S.W.2d 592 (Mo.App.1988) and *Reichert v. Western & Southern Life Ins. Co.*, 648 S.W.2d 619 (Mo.App.1983).

Remington presents her argument without stating the circumstances under which Wal–Mart submitted all instructions but the punitive damage instruction. Those circumstances serve to distinguish the cases cited by Remington. They also demonstrate why Wal–Mart has the right to complain that the trial court erred in denying its motion for a directed verdict and its motion for judgment notwithstanding the verdict.

By her suggestions in the trial court, Remington opposed Wal–Mart's motion for judgment notwithstanding the verdict, upon the same basis she now would preclude Wal–Mart's assertion of error. That is, the doctrine of invited error.

The trial court denied Wal–Mart's motion but recognized the importance of the circumstances under which Wal–Mart submitted these instructions. A portion of those circumstances is established by the following dialogue between the trial court and Remington's counsel when, in oral argument upon the post-judgment motion, Remington invoked that doctrine.

"THE COURT: Well, what I'm saying, Mr. Crites, you didn't submit any instructions, and the record is perfectly—pretty clear on that.

MR. CRITES: I understand.

THE COURT: So, I mean, the Court is faced with the prospect of submitting no instructions to the jury and—

MR. CRITES: Well, I understand. Then the defendants submitted those,

and you asked me if I had any objection to them, and I said that no, I didn't."

It may readily be inferred that Wal–Mart had, in advance of the conclusion of the evidence, prepared instructions. Those instructions included Instruction No. 7, which would, if Wal–Mart's motion for directed verdict were to be overruled, submit "intentional interference with a business expectancy" in a fashion it deemed appropriate. The motion for a directed verdict was overruled. Remington had no instructions. Rather than delay the proceeding, Wal–Mart submitted the instructions it had prepared.

These circumstances do not involve the doctrine of invited error. Wal–Mart did file a motion for a directed verdict at the close of all the evidence. That motion was denied. The applicable Rule provides:

"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion...." Rule 72.01(b).

The trial court had determined to submit the case upon Remington's allegations and theory of "intentional interference with a business expectancy". Wal–Mart was entitled to offer an instruction submitting that issue forced upon it in terms it chose. By doing so, it did not invite any error. This principle has been clearly stated at an early date and not subsequently questioned.

"As we have stated above, appellant offered a general demurrer at the close of respondents' evidence and again at the close of all the evidence. These were overruled, whereupon appellant offered and the court gave an instruction telling the jury that plaintiffs' recovery, if any, was limited to injury caused by the negligent or improper operation of the disposal plants. In view of the fact that the trial court, *on its own motion, restricted* the issues to that issue alone, appellant did not waive other defenses by offering an instruction presenting as favorably as possible an issue it was forced to meet. (citation omitted)." *Riggs v. City of*

*Springfield,* 344 Mo. 420, 438, 126 S.W.2d 1144, 1153, 122 A.L.R. 1496, 1508 (1939).

It has been stated in other terminology. "The reasoning of the *Elkin [v. St. Louis Public Service Co.,* 335 Mo. 951, 954(1), 74 S.W.2d 600 (1934) ] case is that a general demurrer to the evidence challenges the sufficiency of the evidence on every theory of liability alleged in the petition, including the specifications on which plaintiff elects to stand; and that on the overruling of his demurrer the demurrant does not waive his point by submitting converse instructions on the issues submitted because he is *forced* to adopt that course by the adverse ruling on the demurrer." *Klotsch v. P.F. Collier & Son Corporation,* [349 Mo. 40] 159 S.W.2d 589, 595 (Mo. banc 1942). (Emphasis in original.)

That principle has been recently applied in *Hamilton Hauling, Inc. v. GAF Corp.,* 719 S.W.2d 841 (Mo.App.1986). Wal–Mart was not precluded from asserting the trial court erred in not sustaining its motion for a directed verdict and motion for judgment notwithstanding the verdict. The letter of protest was absolutely privileged and provided no basis for the cause of action pled and submitted. The judgment on Count II in favor of Remington and against Wal–Mart must be reversed.

■ On her cross-appeal, Remington's first point is that the trial court erred in sustaining Wal–Mart's motion for summary judgment upon Count IV of her petition. By Count IV, Remington sought judgment against Wal–Mart by reason of its breach of her contract of employment. By incorporation, she alleged Wal–Mart "unilaterally adopted policies and procedures in regard to its relations with its employees" in the form of the Employees Handbook. She then specifically alleged the provision concerning absences quoted above. She then alleged "[b]y adopting the above rule or regulation Defendant Wal–Mart Stores, Inc., expressly and impliedly agreed with Plaintiff that if Plaintiff did not violate the terms of the said rule or regulation, but in fact complied with the terms thereof, that Defendant Wal–Mart Stores, Inc., would not consider that her missing more than three consecutive days of work as a voluntary resignation from her employment." She concluded that Wal–Mart breached her contract of employment by causing its records to show she voluntarily resigned.

Wal–Mart filed a motion for summary judgment on Count IV with suggestions stating "with particularity the grounds therefor", Rule 74.04(c). Those grounds were that by reason of the employee-at-will doctrine the pleading showed there was no genuine issue concerning the nature of Remington's employment and that Wal–Mart was entitled to judgment as a matter of law. It cited cases such as *Maddock v. Lewis,* 386 S.W.2d 406 (Mo.1965), cert. denied, 381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688 and *Johnson v. McDonnell Douglas Corporation,* 745 S.W.2d 661 (Mo. banc 1988).

On appeal, Remington's basic contention is that she "could have reasonably interpreted the language of the handbook and the circumstances under which it was given to her by Wal–Mart, as an offer on the part of Wal–Mart to modify her employment from an at will type of employment to a contractual type of employment, governed by the terms and conditions of the Wal–Mart Employee Handbook." By that contention she is referring to employment for an indefinite period.

"In Missouri the rule is well established 'that in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such cases no action can be obtained for wrongful discharge.' *Christy v. Petrus,* [365 Mo. 1187] 295 S.W.2d 122, 124 (Mo. banc 1956); *Cooper v. City of Creve Coeur,* 556 S.W.2d 717, 720 (Mo.App.1977)." *Amaan v. City of Eureka,* 615 S.W.2d 414, 415 (Mo. banc 1981), cert denied, 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619.

This employee-at-will doctrine has recently been restated and reaffirmed. *Dake v.*

*Tuell,* supra; *Johnson v. McDonnell Douglas Corp.,* supra; *Enyeart v. Shelter Mut. Ins. Co.,* 784 S.W.2d 205 (Mo.App. 1989).

Wal–Mart's Employee Handbook does not alter Remington's status as an employee at will. It is not necessary to state the contents of that handbook in detail. It has been adequately described in the following language.

"McDonnell's unilateral act of publishing its handbook was not a contractual offer to its employees. The handbook was merely an informational statement of McDonnell's self-imposed policies, providing a nonexclusive list of acts for which an employee might be subject to discipline. Several of the rules and regulations in the handbook were couched in general terms and were open to broad discretion and interpretation. The handbook also provided that the rules were subject to change at any time. Given the general language of the handbook and the employer's reservation of power to alter the handbook, a reasonable at will employee could not interpret its distribution as an *offer* to modify his at will status." *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d at 662.

There is nothing in Count IV to allege that Remington was employed for a definite term. The motion for summary judgment was properly sustained.

By her remaining point on appeal, Remington contends the trial court erred in sustaining Edwards' motion to dismiss Count V. She first argues this was error because that count alleged the elements of a claim for interference with a contract *or* business expectancy, citing *Bandag of Springfield, Inc. v. Bandag Inc.,* 662 S.W.2d 546 (Mo.App.1983). This argument has no merit. Count V alleged Edwards induced Wal–Mart to breach the contract of employment of Remington alleged in Count IV.[3] As demonstrated above, Remington was an employee "at will" and Wal–Mart breached no contract of her employment.

Remington's claim that Count V stated a cause of action for interference with a busi-

ness expectancy has been first asserted in her brief. That issue was not before the trial court and will not be considered on appeal. *City of St. Peters v. Dept. of Nat. Resources,* 797 S.W.2d 514 (Mo.App.1990).

Remington next argues the trial court erred in dismissing Count V because it did not sua sponte grant her the right to amend. "Moreover, no trial judge is required sua sponte to grant leave to amend a deficient pleading. *Greening v. Klamen,* 719 S.W.2d 904, 906 (Mo.App.1986)." *Conroy v. Solon Gershman, Inc.,* 767 S.W.2d 381, 383 (Mo.App.1989).

The judgment of the trial court against Wal–Mart is reversed. The judgment of the trial court granting Wal–Mart's motion for summary judgment on Count IV is affirmed. The judgment of the trial court dismissing Count V against Edwards is affirmed. The costs are assessed against Remington.

PREWITT, J., and FLANIGAN, C.J., concur.

CROW, J., recused.

---

3. Ironically, this is apparently the issue separately submitted against Edwards under Count III. Upon that submission, the jury, by verdict B, found in Edwards' favor.