**Jerome D. BLAND, Respondent,**

v.

**CITY OF TRENTON, Missouri, a Municipal Corporation, Michael R. Dennis, Jack Mullins, Larry Williams, Stanley Hall, Floyd Pew, Weldon Berry, Raphael Cox, B. G. McCaslin, as Councilmen of the City of Trenton, Missouri, Appellants.**

No. WD31650.

Missouri Court of Appeals, Western District.

May 19, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 23, 1981.

---

Christopher P. Raynes, Trenton, for appellants.

Michael D. Arnold, Gallatin, for respondent.

Before MANFORD, P. J., WASSERSTROM, C. J., and NUGENT, J.

WASSERSTROM, Chief Judge.

Jerome D. Bland sought review under the Administrative Procedure Act, Chapter 536,[1] concerning his termination as a police officer for the City of Trenton. The circuit court reversed and remanded to the City Council of Trenton for reconsideration and further action. We in turn reverse the Circuit Court's judgment and reinstate the termination of Bland's employment.

Bland was a Lieutenant on the Trenton police force and upon the departure of the Chief of Police, he took over briefly as Acting Chief in the fall of 1976. However, on September 15, 1976, John R. Lee was employed as Police Chief. Upon taking

---

1. All references to Chapter 536 and other provisions of the Missouri statutes are to RSMo 1978. The provisions of Chapter 536 are replicated in Rule 100, but for simplicity, references in this opinion will be solely to the statute.

over his duties, Lee requested a written resume from each police officer, together with suggestions for improvements and proposed solutions for problems. Approximately seven officers submitted complaints to Lee concerning Bland and asked that he be removed. Although Lee tried to pass by these charges in hopes that the situation would right itself, the police officers continued to voice complaints concerning Bland.

In view of the persistence of the feeling against Bland by his fellow officers, Lee then asked each officer to make a written report specifically directed toward the Bland problem, and those who were opposed to Bland were asked to give Lee specifics with times and dates. In response one officer returned a neutral letter, another officer refused to write anything, and all the other officers wrote very negative comments against Bland.

Chief Lee took the officers' letters to the Grievance Committee established by the City Code.[2] The Grievance Committee proceeded to hold on an informal conference at which Bland appeared without counsel. At that time, the complaining police officers were also present and stated their complaints against Bland. The conference concluded with a statement by Lee that for the benefit of Trenton and because other officers were threatening to resign, that he thought that Bland should resign. Bland refused to do so.

Thereupon Lee served Bland with a recommendation for discharge. Bland applied for a formal hearing. Pursuant to that request, a public hearing was held by the Grievance Committee on December 15, 1976, in which Bland's attorney and the City's attorney participated. The complaining officers as well as other witnesses testified, and Bland testified in rebuttal. As a result of that hearing, the Personnel Board[3] recommended that Bland be discharged, and the Mayor did so. Bland promptly filed notice of appeal from that action to the City Council. By agreement, the City Council heard oral argument by Bland's attorney and the City attorney upon the transcript of the December 15 hearing. Upon review of the transcript and oral argument, the City Council upheld the discharge; whereupon Bland filed petition for review in the circuit court.

After reviewing the administrative transcript and hearing argument of counsel, the circuit court concluded that the action of the City Council was unsupported by substantial evidence and that Bland had been denied constitutional protection of due process of law. On the present appeal, the appellants (hereinafter referred to collectively as "the City") challenge each of those conclusions reached by the circuit court.

I.

A preliminary matter requires attention. Bland filed his petition for review on February 3, 1977. Under Section 536.130–1, he was obligated to file the administrative record in the circuit court within 30 days after the filing of the petition "or such further time as the court may allow." The administrative transcript was not filed until January 18, 1980. The City moved to dismiss Bland's petition for review because of his failure to timely file the transcript. That motion was overruled by the circuit court, and the City assigns that action as error.

2. Pursuant to statutory Sections 85.541 to 85.-571, the City of Trenton established a Merit System Police Department under Section 25–29 of Trenton's City Code, 1975. Section 25–43(b) provides that the Chief of Police shall have authority to recommend discharge of any police officer for cause, and the officer then has a right of appeal to the Grievance Committee.

Section 25–41 provides that the Grievance Committee shall promptly investigate, consult with the Chief of Police and the aggrieved officer, and seek to resolve the matter within the department. If no solution to the grievance is reached within 72 hours, the aggrieved officer has a right to appeal to the City Council.

Section 25–42 provides that the Mayor with a ¾ majority vote of the Personnel Board has the authority to discharge any policeman for cause. The discharged policeman then has a right of appeal to the City Council.

3. The members of the Personnel Board are also members of the Grievance Committee. Accordingly all members of the Personnel Board heard the testimony given at the public hearing of December 15, 1976.

*Greene County v. Hermel, Inc.*, 511 S.W.2d 762 (Mo.1974) holds that the filing of the transcript of the administrative hearing is not jurisdictional. Both that case and also *Bresnahan v. Bass*, 562 S.W.2d 385 (Mo. App.1978), hold it to be a matter of discretion whether to proceed with the administrative review despite late filing of the transcript.

Although there was an inordinate amount of delay in this case between the filing of the petition for review and the filing of the transcript, the City has made no showing that the late filing of the transcript handicapped it in preparing for the circuit court hearing or that the late filing in any way delayed the final consideration of this case by the circuit court. Under those circumstances, the circuit court did not abuse its discretion in allowing the transcript to be filed out of time and by proceeding with the review.

## II.

■ Familiar rules govern the question as to the sufficiency of the evidence to support Bland's termination of employment. The authority of the courts in reviewing administrative proceedings such as this is limited to ascertaining whether the agency could reasonably make its findings on all of the evidence before it and whether those findings were clearly contrary to the overwhelming weight of the evidence; the court may not substitute its judgment for that of the agency; credibility of witnesses must be left to the judgment of the agency; and on review, the evidence is to be viewed in a light most favorable to the decision of the agency. *Macchi v. Whaley*, 586 S.W.2d 70 (Mo.App.1979); *Miller v. Whaley*, 581 S.W.2d 916 (Mo.App.1979).

■ With respect to the evidence in this case, the circuit court stated: "the only evidence supporting the allegations contained in the recommendation for discharge are with regard to the allegation that the plaintiff [Bland] was sleeping on duty; that evidence taken in the light more favorable to the City does not in my opinion rise to the competance [sic] of substantial evidence." We disagree.

First, with respect to the allegation of sleeping on duty. Concerning this matter Tom Mock, a reporter for radio station KTTN, appeared as a witness for the City. He testified that on one early morning between 4:30 and 5:30 he was making his usual trip to the police station, and as he walked down the alley he saw a person sitting in a police car. He approached the car within touching distance, looked in the car and saw Bland sitting with his head on the back of the front seat passenger side with his eyes closed. Mock entered the police station, performed some chores inside, and left about five minutes later. As he left the station, he noted that Bland was still in the same position.

In his testimony, Bland did not deny what Mock had said. Rather, Bland testified as follows: "That night Officer Summers and I were together in the car. This was about 4:30 or so in the morning, and Summers was going in to station, for a few minutes, and I laid my head back on seat, I don't deny it, I had been ill, yes sir." Thus Bland's defense was essentially one of confession and avoidance based upon some unexplained "illness." It was entirely competent for the City Council to disbelieve Bland in the latter regard, to believe that Bland was asleep in the car, and to treat the sleeping on duty as unexcused.

Of the other charges leveled against Bland, the most serious one was that his fellow officers did not trust him and had no faith that he would back them up in an emergency. That lack of confidence was expressed by Officers McClure, McKowan and Lewis. They justified that fear on the basis of a number of incidents which had occurred.

One such incident was when the Trenton Police had a "stake out" to apprehend some narcotics dealers. Different policemen were assigned certain stations where they would be in a position to apprehend the suspects after they left a bowling alley where a drug sale was expected to occur. Bland was stationed to the south on Oklaho-

ma Street. Chief Frances was in the bowling alley and radioed Bland when the vehicle left in his direction. Bland did not stop the vehicle. With respect to this incident, Bland confirmed the "stake out," but testified that he never saw the suspects' car come past his post. The credibility of that denial again was for the City Council.

Related to that same incident, Officer Lewis finally located the suspects about an hour later and managed to block their vehicle. He requested a backup officer, and Bland responded that he was in a position to help. Lewis proceeded to have the suspects leave the vehicle, patted them down but noticed that Bland was not around. Bland did not pull up until appreciably later.

In another disassociated instance, Officer Lewis saw a man named Shuler driving in an intoxicated condition. Shuler was known to be combative when intoxicated, so Lewis requested a backup before making an arrest. Bland and Officer Moore were available in a car at the police station, and Lewis radioed Moore and Bland, for help. At that time Bland jumped out of the car and told Moore to go backup Lewis alone and that he, Bland, would not come. Moore confirmed Lewis in this testimony. With respect to this incident, Bland testified simply, "I don't remember that ... I do not remember any statement about you can take him, unless it would have been in a joking manner." Again, the credibility of the opposing witnesses as to this incident was for the City Council.

Related to that incident, Lewis and Moore brought Shuler to the police station after he had been arrested. At the police station, Shuler started to fight. Bland was at the police station, according to Moore, but Bland did not help his fellow officers.

In another instance, Officer Lewis arrested one Ellis and took him to the police station in handcuffs. Lewis started to take off the cuffs at the police station, but after one cuff had been removed, Ellis started swinging at Lewis with the dangling handcuffs. As Lewis tried to get the situation under control, Bland came in and grabbed Lewis, causing Lewis to wonder "whose side he was on." With respect to the Ellis incident, Bland testified, "I just didn't think, at the time I seen him, I thought Officer Lewis was beating on the young man." Again, who was the more credible with respect to this incident and whether Bland failed to properly support Lewis was for the City Council to decide.

It is unnecessary to review the number of other charges made against Bland and the evidence given by the various police officers in support of those charges. It suffices to say that the evidence already discussed is sufficiently substantial to support the decision made successively by the Police Chief, the Grievance Committee, the Personnel Board, the Mayor and the City Council. Over and beyond the importance of the various individual incidents about which the witnesses testified, the composite picture shows a police force of which an overwhelming majority held a deep seated, strongly felt antagonism to Bland. The testimony, believed by the administrative fact finders, showed episodes which justified the other officers' antipathy and lack of confidence in Bland. That opposition by a majority of the police officers constituted a fact which the City authorities had to recognize and with which they had to deal. These circumstances constituted good "cause" under the City Code and a lack of "good behavior and efficient service" under statutory Section 85.541–2(4) sufficient for Bland's termination.

### III.

During the public hearing before the Grievance Committee on December 15, 1976, Bland's attorney requested production of and an opportunity for him to examine Bland's personnel file. The purpose of this request was so that his attorney might inspect the letters of complaint which the other police officers had submitted to Chief Lee. Permission for such inspection by Bland's attorney was denied. It was that denial which the circuit court characterized in its judgment as a denial of constitutional protection by due process of law.

The United States Supreme Court did hold in *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957) that when the government introduced testimony of a witness who had made a prior written report, the defendant is then entitled to production and inspection of that prior report. However, the Missouri Supreme Court views *Jencks* as merely a procedural requirement binding only in the federal practice and that *Jencks* does not enunciate any constitutional doctrine binding upon state courts. *State v. Smith* 431 S.W.2d 74 (Mo.1968); *State v. Aubuchon,* 381 S.W.2d 807 (Mo.1964); and *see Rose v. State Board of Registration for the Healing Arts* 397 S.W.2d 570 (Mo.1966).

Bland did have a right to see the statements in question, but only in the manner prescribed by statute. The applicable statutory provisions for discovery in an administrative proceeding appear in Sections 536.-073 which provides for depositions, and 536.077 which provides for subpoenas and subpoenas duces tecum. There is no statutory provision permitting production of documents upon motion, and such right therefore does not exist. *Brown v. McNeal,* 586 S.W.2d 359 (Mo.App.1979); *Cox v. McNeal,* 577 S.W.2d 881 (Mo.App.1979); *Macchi v. Whaley, supra; Miller v. Whaley, supra.*

Moreover, the refusal to permit inspection of Bland's personnel file resulted in no prejudice to him. He had already been confronted with all of the witnesses against him and had heard their testimony during the informal conference which had been held by the Grievance Committee. As Bland himself testified at the December 15 hearing, he did not hear anything new at that session which he had not already heard at the earlier informal meeting. Under similar circumstances it has been held that the refusal to open the police department internal investigation files results in no prejudice to the policeman being charged. *Miller v. Whaley, supra.*

The judgment of the circuit court is reversed.

All concur.