Louis GORDON, Appellant,

v.

CITY OF KANSAS CITY,
Missouri, Respondent.

No. WD 39383.

Missouri Court of Appeals,
Western District.

Feb. 16, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 1988.

Application to Transfer Denied
May 17, 1988.

James R. Anderson, Kansas City, for appellant.

Norma S. Webster, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and
NUGENT and MANFORD, JJ.

NUGENT, Judge.

Plaintiff Louis Gordon appeals from the decision of the circuit court affirming the decision of the Kansas City Personnel Board terminating his employment with the City of Kansas City, Convention Facility Department.

We affirm.

Louis Gordon was employed by the City of Kansas City, Convention Facility Department, from December, 1977, to November 23, 1985. On October 28, 1985, plaintiff was assigned to clean the escalators in the convention center. A convention of plastic surgeons was meeting, and members of the profession, their spouses and children were present.

Mr. Michael Powell, Mr. Gordon's supervisor, testified both at the hearing and at his deposition that he was checking the work areas that morning and observed that plaintiff was standing and talking with a security guard. He approached plaintiff and asked if he had finished his cleaning and why he was standing around. Mr. Powell testified that Mr. Gordon asked him why he did not "get on" the guard instead of him, and Mr. Powell replied that the guard did not work for him but that Mr. Gordon did. He then told Mr. Gordon that he should finish his work and go on to another task.

At that point the situation became more hostile. Mr. Powell testified that Mr. Gordon said that he (Mr. Powell) would "get

tired of f_____." with him. Mr. Powell and Mr. Gordon rode down an escalator to the first floor where their altercation became louder and more profane, and people began to look at the two men.

Ms. Debbie Mitchell, a receptionist, testified that she heard loud voices and looked over the railing. There she observed the two men and motioned for them to lower their voices. Mr. Powell did, but Mr. Gordon did not. Mr. Powell testified that Mr. Gordon finally walked away and went to his new assignment. At no time did Mr. Gordon refuse to do his assigned work.

Mr. Powell said that after their argument he went to his office and looked at the rules and regulations on insubordination; those included a memo from Robert Roseblock, department head, detailing the procedure to be followed in cases of insubordination. That policy went into effect on May 13, 1985. He then called his supervisor, Joseph Dickerson, who told him to take the appropriate action. After looking at Mr. Gordon's department file, Mr. Powell recommended that he be discharged.

Two days later on October 30, Mr. Al Englehardt, a hearing officer, sent Mr. Gordon a letter notifying him that a pre-determination hearing would be held on November 5 concerning his supervisor's recommendation that he be terminated for misconduct and that he might bring a person of his choice with him to the hearing.

A hearing was held on November 5, and on November 13, Mr. Englehardt informed Mr. Gordon by inter-office communication that he was recommending that Mr. Gordon be terminated for misconduct. Plaintiff was terminated for misconduct on November 23.

Plaintiff began the administrative review process on January 21, 1986, with a hearing before the Personnel Board of Kansas City. On April 24 the board issued its written decision that plaintiff's termination was proper. Plaintiff then appealed to David Olson, City Manager of Kansas City, and on May 27, Mr. Olson issued his decision affirming the board. After exhausting his administrative remedies, plaintiff filed his petition for review in the circuit court. That court affirmed the decision of the administrative agency, and this appeal followed.

Plaintiff argues three points of error: (1) that the decision of the personnel board was not supported by competent and substantial evidence on the whole record; (2) that the decision was arbitrary and capricious and represented an abuse of discretion; and (3) that the decision was in violation of applicable constitutional provisions.

■ On appeal we review the decision of the administrative agency; our review is limited to determining whether competent and substantial evidence exists on the whole record to support the findings of the agency. If so, and if no abuse of discretion occurred, the decision must be affirmed. *Guntli v. McLeod*, 646 S.W.2d 899, 901 (Mo.App.1983); *Bland v. City of Trenton*, 618 S.W.2d 438, 441 (Mo.App.1981). The evidence is to be viewed in the light most favorable to the decision of the agency. *Bland, supra*, at 441.

In its findings of fact and conclusions of law the personnel board found that Michael Powell had observed Louis Gordon talking to a security guard and not doing his work on the morning of October 28, that he had questioned Mr. Gordon and that Mr. Gordon had become verbally abusive and shouted obscenities at Mr. Powell and that the argument occurred in an area in which the public was present. The board concluded that those actions constituted gross misconduct and that termination of employment was appropriate action.

Plaintiff contends that the board failed to address the issue of "contributory responsibility" by the supervisor Michael Powell. It heard Mr. Powell's testimony, and his deposition was also made part of the record. Both show that Mr. Powell testified that he, as well as Mr. Gordon, became loud during their argument; Mr. Powell denied calling Mr. Gordon names or cursing during the exchange. He also testified that he lowered his voice when Ms. Mitchell indicated that they were too loud.

Ms. Mitchell testified that she heard two loud voices and that they turned out to be Mr. Powell and Mr. Gordon. She said that Mr. Powell quieted down when she motioned and that she did not hear curses.

 Mr. Robert Robinson, the security guard, testified at the hearing that Mr. Powell had accused Mr. Gordon of "bumming" and that Mr. Gordon had naturally taken offense. He also testified that Mr. Gordon was doing his job when his supervisor approached him and that he had been working steadily. That testimony contradicted the statement he gave Mr. James Laughlin, a security manager for the convention center, on October 30. In his statement he said that Mr. Gordon had been standing around and talking about baseball with him and generally "goofing off." He said that Mr. Gordon became so angry when questioned that he thought that Mr. Gordon was going to attack Mr. Powell.

Mr. Powell is a supervisor; his job entails making sure that employees under his direction do their jobs properly. Part of his job is to approach employees from time to time and ask what they are doing or why they are doing a particular act. In asking Louis Gordon why he was standing around and talking—or in asking him if he had finished his assigned task—Mr. Powell was doing no more than his duty. Had Mr. Gordon answered—or simply gone on to do his job after receiving a new assignment—the argument could have been avoided. Mr. Powell did not contend that he did not raise his voice; he said that he did. After hearing the testimony of all the witnesses, the board found no "contributory responsibility." The board was in the best position to judge the credibility of the witnesses. An administrative agency need not go into evidentiary detail in its findings of fact in order to make its findings valid. *Citizens State Bank v. State Banking Board*, 602 S.W.2d 895, 899 (Mo.App.1980).

 In his second point plaintiff contends that he was terminated in violation of applicable sections of the Memorandum of Understanding by and between the City of Kansas City, Missouri, and Local 500 of the American Federation of State, County and Municipal Employees, the AFL–CIO agreement, existing sections of the Kansas City Classification and Compensation Plan, and published rules and policies of the Special Facilities Department. he argues that he was discharged because of insubordination and that his discharge violated the department's progressive disciplinary system established by the department head's memorandum on insubordination.

The argument between plaintiff and his supervisor occurred on October 28. On October 30, Mr. Gordon was informed by a hearing officer that his supervisor had requested that he be terminated for "misconduct." On November 13, that hearing officer recommended that he be terminated for "misconduct." His termination notice was marked "misconduct." At no time was Mr. Gordon charged with insubordination.

In his deposition Mr. Powell testified that, after the argument with Mr. Gordon, he looked up the rules and regulations on insubordination and that he considered Mr. Gordon's acts insubordinate. Mr. Powell was free to look at any rules and regulations he chose, and he may have considered Mr. Gordon insubordinate. The fact remains that Mr. Gordon was not charged with insubordination but with misconduct. He knew from October 30 he was being charged with misconduct. The rules and regulations on subordination, including Mr. Roseblock's memo, are irrelevant to his case. Although he charges that he was terminated in violation of other rules, regulations and contracts, he makes no specific arguments for any other than the Roseblock memo on insubordination. The board failed to find any applicable violations. We also find none.

Plaintiff contends in his third point that his discharge violated "applicable constitutional provisions." In his argument he states that "no person shall be deprived of life, liberty or process (sic) without due process of law" and then argues that he is not an employee at will and so cannot be terminated without just cause. Again he returns to his argument that he was terminated for insubordination (arguing that the city attempted to change the charge to

misconduct) and that, therefore, the document published by Mr. Roseblock, which outlined the procedure to be followed in cases of insubordination, controls.

Plaintiff relies on *Enyeart v. Shelter Mutual Insurance Co.*, 693 S.W.2d 120 (Mo.App.1985). In *Enyeart* the plaintiff argued that he had been given a copy of an employees' handbook which set out the procedures to be followed in disciplinary actions and that those had not been followed in his case. This court held at 123 that "if an employer elects to establish policies in its relations with employees and publishes those policies in a document distributed to employees, the employer is contractually bound to observe those policies until they are modified or withdrawn." Plaintiff, however, fails to realize that at no time did his employer charge him with insubordination. He was at all times charged with misconduct. *Enyeart* is not in point.

Misconduct is a broad term and may sometimes encompass insubordination, but its meaning encompasses many other types of behavior as well. Mr. Gordon did not refuse his supervisor's direction; he did not refuse to perform an assigned task. He called his supervisor names, cursed loudly and generally created a scene in a public place while Mr. Powell was attempting to do his job. Mr. Gordon's behavior constitutes misconduct and was just cause for his termination.

The decision of the agency is supported by competent and substantial evidence on the whole record, and we find no abuse of discretion. We affirm.

All concur.