*906 BEAM, Circuit Judge,
dissenting.
I respectfully suggest that under controlling law, Krentz did not waive his constitutional right to procedural due process. I also suggest that had Krentz been afforded the Missouri Administrative Procedures Act (MAPA) (Mo.Stat.Ann. § 536.068) “contested case” hearing now required by the court, his constitutional rights would still have been violated. Accordingly, I dissent.
A short analysis of this dispute and the court’s resolution is in order. From Krentz’s allegations, it appears that until a more recent run-in with the firefighter’s union, he had had no problems for many years in the performance of the duties of his tenured position. With union help, Zoellner was elected to the three-person board of the Robertson Fire Protection District (District), and from there things went down hill for Krentz. After repeated complaints from union officials and Zoell-ner, Krentz was given notice of his termination. At the District board’s request, he attended the November 16, 1997, meeting at which the District chose to speak only through its lawyer but specifically prohibited Krentz from speaking through his retained counsel. Krentz excused himself from this one-sided encounter and filed suit in district court, alleging, for purposes of this dissent, a violation of his constitutional right to procedural due process. The district court determined for the first time that in Missouri, a local fire protection district is an “agency” as defined by MAPA and the court in this appeal now rules that Krentz’s failure to exhaust administrative procedures under MAPA constituted a waiver of constitutional rights. With this determination, I disagree.
I do, however, agree with several interim conclusions reached by the court. I agree that Krentz had a property interest in his seven-year contract of employment with the District and that absent a valid waiver, such interest could not be erased through job termination without his being accorded procedural due process under the Fourteenth Amendment. I further agree that his termination occurred on November 20, 1997, when his benefits were discontinued and that the inelaborate hearing the District afforded Krentz on November 16, 1997, met the pre-termination hearing requirements established by Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). At that point, however, I respectfully part company with the court.
The Supreme Court’s holding that a pre-termination hearing need not be elaborate rested, in substantial part, on the fact that Loudermill received a full post-termination hearing. See Loudermill, 470 U.S. at 546-47, 105 S.Ct. 1487. In this 42 U.S.C. § 1983 claim concerning a vested property interest, it is clear that Krentz did not receive a constitutionally adequate post-termination hearing, and I do not understand the court to seriously contest this conclusion. However, the court states that Krentz was responsible for this problem because he walked out of his November 16 meeting with the District’s board and did not thereafter institute a “contested case,” as permitted by MAPA. See Mo. Stat. Ann. §§ 536.010(2) & 536.063(1). I disagree. It was the District that violated Krentz’s procedural due process rights by not providing the “full post-termination hearing” required by Loudermill and other Supreme Court and Eighth Circuit precedent. For starters, a tenured employee is simply not required to exhaust state administrative remedies before bringing a federal action to vindicate constitutional rights. See Patsy v. Florida Bd. of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).
At its core, procedural due process requires “the opportunity to be heard ‘at a meaningful time and in a meaningful manner.’ ” Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). In a termination setting, we have stated that a meaningful opportunity to be heard requires:
*907 1) clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them;
2) notice of both the names of those who have made allegations against the [employee] and the specific nature and factual basis for the charges;
3) a reasonable time and opportunity to present testimony in his or her own defense; and
4) a hearing before an impartial board or tribunal.
Riqqins v. Board of Regents, 790 F.2d 707, 712 (8th Cir.1986).
The court does not dispute these requirements. Instead, it says that procedures under the “contested case” provisions of MAPA provide Fourteenth Amendment due process and that Krentz had the duty to seek out and use these particular state remedies to avoid a waiver of his constitutional rights. This is wrong for several reasons.
Prior to the district court’s holding, Krentz had no hint that MAPA was applicable to his particular dispute nor did he have a reasonable opportunity to present a defense because a local fire protection district had never before been found to be an “agency” within the purview of MAPA. Also, under MAPA, and the facts of this action, there is no provision for a hearing before an impartial board or tribunal as required by Riggins. Indeed, this newly minted MAPA agency, acting through its board, the post-hearing decision-maker under MAPA, had already decided to terminate Krentz well before the pre-termi-nation Loudermill hearing. How the court can conclude that under these circumstances, MAPA procedure passes constitutional muster as the provider of a fair and impartial decision-maker is difficult to understand.
Of much greater concern to me is the court’s conclusion that Krentz waived his constitutional rights by not unilaterally insisting upon . an unconstitutional MAPA procedure. The court says,
Because the District is a MAPA agency, Krentz could have instituted a “contested case” proceeding under the MAPA after his termination became effective on November 20. See Mo.Rev.Stat. § 536.063; 20 MISSOURI PRACTICE ■ § 9.02 (West 1995) (“[M]any contested cases are initiated other than by an agency .... For example, a public employee may challenge his dismissal.”) (citing Bland v. City of Trenton, 618 S.W.2d 438, 439-40 (Mo.Ct.App.1981)). But Krentz declined to pursue the available MAPA post-termination remedy.
Ante at 904 (footnote omitted).
The court relies upon two of our cases to support this unusual requirement, Riggins, 790 F.2d at 711 and Bohn v. County of Dakota, 772 F.2d 1433, 1441 (8th Cir.1985), Both are clearly inapposite. The court states, “In both Riggins and Bohn, the respective plaintiffs were found to have waived their due process claims because they were aware of the available administrative procedures, yet they did not pursue relief thereunder. See Riggins, 790 F.2d at 709-10; Bohn, 772 F.2d at 1441.” (Emphasis added.) The emphasized language highlights the court’s error. In Riggins, for instance, the University had a formal grievance procedure, which Riggins had used before, and she testified that’she was aware of it. See Riggins, 790 F.2d at 709. Krentz contends that he was unaware that MAPA’s provisions applied to personnel actions taken by fire districts. The court’s response is,
in Missouri, “[pjersons are conclusively presumed to know the law.” Missouri Highway & Transp. Comm’n v. Myers, 785 S.W.2d 70, 75 (Mo.1990); In re Estate of Pittman, 16 S.W.3d 639, 643 (Mo.Ct.App.2000). Krentz “could have ... ascertained” the applicability of the MAPA’s contested case provisions “from a reading of the statutes and pertinent cases.” Myers, 785 S.W.2d at 75.
Ante at 904.
There is a twofold problem with this answer. Waiver of a constitutional right is *908 exclusively a question of federal law, Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). This court has acknowledged this principle. “[W]aiver becomes a federal question about which the federal courts are obligated to make their own independent determination.” Williams v. Brewer, 509 F.2d 227, 232 (8th Cir.1974). And, under federal law, a waiver of a constitutionally guaranteed right must be “an intentional relinquishment or abandonment of a known right or privilege.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
The court concedes that prior to this case no court, state or federal, had ever held that fire districts were “agencies” for purposes of MAPA. See ante at 903. However, the court now establishes precedent that a tenured employee must have the necessary legal skills or hire and pay counsel with the necessary legal skills to research state law to find any potentially applicable administrative procedures or risk waiver of a constitutional right. This flies in the face of established precedent.
I concede that the Supreme Court has, to date, been reluctant to spell out the difference, if any, in waiver concepts as they may apply in the civil or criminal context. However, it has strongly implied, without specifically deciding, that waiver requirements are the same in either instance. In D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), the Court assumed without deciding that the same standards apply in both contexts. In Fuentes v. Shevin, 407 U.S. 67, 95, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court again avoided holding that the standards are the same in civil and criminal cases, but said, “a waiver of constitutional rights in any context must, at the very least, be clear.” Id. (emphasis in original). In Ohio Bell Telephone Co. v. Public Utilities Commission, the Court in a civil case said, “we do not presume acquiescence in the loss of fundamental rights.” 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). Seven circuits (Second, Third, Fourth, Fifth, Sixth, Ninth and Eleventh) have either held or strongly stated that the standard for judging waiver should be the same in both civil and criminal cases.[8]
In any event, I see no reasoned basis for a different standard. And, returning to Johnson v. Zerbst, the Court notes that the “courts indulge every reasonable presumption against waiver of a fundamental constitutional right” and they will not “presume acquiescence in the loss of fundamental rights.” 304 U.S. at 464, 58 S.Ct. 1019. The Court further states that a person cannot waive a constitutional right through ignorance or negligence. See id. at 465-68, 58 S.Ct. 1019.
In the face of this precedent, to require Krentz to be knowledgeable about whatever administrative remedy may be lurking among state statutes or suffer a waiver of constitutional proportions is serious enough. But to charge him with predicting where the law might go with regard to whether or not a local fire district is an agency within the purview of MAPA borders on the excessive both as a matter of policy and as a matter of law. Indeed, in Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Supreme Court ruled to the contrary. Curtis was a libel case filed by a public figure, but not a public official, that had been tried prior to the Supreme Court’s decision in New York Times v. Sullivan, *909 but had not been appealed until after the Sullivan decision.[9] Curtis Publishing first asserted a First Amendment based defense-relying on the Sullivan decision-in a motion for a new trial. The motion was denied, and the Fifth Circuit Court subsequently held that Curtis Publishing had waived any First Amendment based defenses by failing to assert them at trial. The Fifth Circuit found that Curtis Publishing should have seen “ ‘the handwriting on the wall’ ” and known that the Supreme Court would possibly craft a rule providing Curtis Publishing with this additional defense. Curtis Publishing, 388 U.S. at 143, 87 S.Ct. 1975 (quoting Curtis Publ’g Co. v. Butts, 351 F.2d 702, 734 (5th Cir.1965)).
The Supreme Court, by an eight to one margin, held that Curtis Publishing had not waived its constitutional defense on these facts.[10] Although there had previously been indications in dissenting opinions, and in extra-judicial statements made by a justice, that a First Amendment rule limiting libel actions brought by public officials might be crafted, it was not unreasonable for a defendant to assert only state-based defenses in a trial prior to the Sullivan decision. See id. at 144, 87 S.Ct. 1975. Under these circumstances, Curtis Publishing could not have waived a “known right” before it was aware of the decision in Sullivan. Id. at 145, 87 S.Ct. 1975.
The Supreme Court indicated a person does not knowingly waive a constitutional right by fading to predict how the law might develop. Applied to Krentz, waiver should not be found upon his failure to predict the District subsequently would be held to be an “agency” subject to MAPA provisions.
I believe the court’s opinion fundamentally changes the legal landscape in this circuit with regard to waiver of constitutional rights. In doing so, it establishes exceedingly unfair precedent, especially for tenured employees who do not independently understand the need for or cannot afford a lawyer to search state statutes for potentially applicable administrative procedures no matter now obscure. The summary judgment should be reversed and Krentz’s constitutional claim should be remanded for trial.
Accordingly, I dissent.

. See Lake James Community Volunteer Fire Dep't Inc. v. Burke County, 149 F.3d 277, 280 (4th Cir.1998) (stating that a contractual waiver of a constitutional right must be knowing and voluntary); Gete v. INS, 121 F.3d 1285, 1293 (9th Cir.1997) (stating that principles governing waiver of constitutional rights apply equally in criminal and civil context); W.B. v. Matula, 67 F.3d 484, 497 (3d Cir.1995) (same); United States v. Local 1804-1, 44 F.3d 1091, 1098 (2d Cir.1995) (same); K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 756 (6th Cir.1985) (same); Mosley v. St. Louis S.W. Ry., 634 F.2d 942, 946 n. 5 (5th Cir.1981) (Mosley also serves as precedent for the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981)). A search of the circuits yielded no case that held there was a different standard in the civil context.

. In New York Times Co. v. Sullivan, the Supreme Court for the first time explicitly stated that because of First Amendment considerations a court cannot award libel/slander damages to a public official, for a falsehood related to his official conduct, without proof of actual malice. 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

. The opinion of the court was a plurality opinion joined by four justices. Two other justices, who had dissented from the final result of the case (which found that no waiver had been made but that the libel judgment should stand against Curtis Publishing), explicitly joined in the opinion relating to waiver. And two justices who dissented from the result indicated that they also believed the constitutional defense had not been waived because they would have ruled in favor of Curtis Publishing. Curtis Publ’g, 388 U.S. at 133, 170, 172 n. 1, 87 S.Ct. 1975.