Robert E. ENYEART, Appellant,

v.

SHELTER MUTUAL INSURANCE COMPANY, Respondent.

No. WD 36426.

Missouri Court of Appeals, Western District.

April 9, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 28, 1985.

Application to Transfer Denied Aug. 7, 1985.

Michael W. Manners, Paden, Welch, Martin, Albano & Graeff, P.C., Independence, for appellant.

Jack L. Whitacre, Mark P. Johnson, Spencer, Fane, Britt & Browne, Kansas City, for respondent.

Before CLARK, P.J., and TURNAGE and KENNEDY, JJ.

CLARK, Presiding Judge.

Appellant brought suit against respondent, his former employer, for wrongful discharge. The trial court ordered the petition dismissed, on motion filed by respondent, for failure to state a claim on which relief could be granted. Appellant contends he was entitled to maintain the action, and that the trial court erred in entering the dismissal, because respondent's right to discharge appellant was subject to compliance by respondent with disciplinary provisions set out in an employee handbook. We agree and order the petition reinstated.

According to the petition allegations, Enyeart was hired by respondent's affiliate in 1977. He was transferred to a position of district sales manager with respondent in 1980 and was discharged in 1982. At the time Enyeart moved to the position of sales manager, he was given a copy of an employees' handbook. Among the provisions of the handbook, attached to the petition as an exhibit, was a section entitled, "Forms Of Disciplinary Action". Subheadings follow describing Verbal Warning, Written Notice Of Probation, Suspension, Discharge or Release, Grounds For Disciplinary Action and Right of Appeal. The gist of Enyeart's complaint is that he was discharged without observance of any of the procedures set out in the handbook and in violation of the implied covenant of good faith which his employment and the representations of the handbook conveyed.

As best the limited material in the legal file may be construed, the order of dismissal seems to have been based on the proposition asserted in the dismissal motion that appellant was an employee at the will of respondent, that he was subject to discharge at any time without notice or cause and that he could not, therefore, assert or maintain an action for wrongful discharge. In the first and determinative point on appeal appellant contends the disposition ig-

nores the petition claim that the voluntary adoption by respondent of policies controlling employee discipline and discharge modified the employment contracts of appellant and others similarly situated and that appellant was bound to follow those policies in undertaking to terminate appellant's employment.

The section of the employee handbook applicable here is inartfully worded, contains grammatical errors and is less than a model of clarity. This appraisal is illustrated by the opening paragraph which purports to state the purpose of "Disciplinary Action Policy And Procedure" as "To encourage and maintain a more uniform and consistent approach in dealing with problems relating to Company rules, regulations or work performance. The Company and the employees expect that the Supervisor will take the necessary action in a timely manner consistent with the problem involved". The balance of the document section is headed "Forms Of Disciplinary Action" and appears to catalog successively severe measures commencing with a verbal warning and progressing through notice of probation, suspension and discharge. The section concludes with a provision that an employee may appeal to the "Personnel Department" from any disciplinary action considered to be unjust.

One section of the policy statement advised that an employee is not to be discharged until both verbal warning and notice of probation have issued, "except in extreme cases". Another paragraph states that engaging in any activity which represents a conflict of interest or violation of other company rules "may be grounds for immediate discharge". The document unquestionably represents an attempt to set out an orderly procedure for rectifying deficiencies in employee performance short of discharge. At the same time, a sense is conveyed that the author of the policy did not intend that all cases be governed by the procedures described. When applied to a specific case, the statement of policy and procedure and the rights of the affected employee are unclear.

■ We observe at the outset that the employment-at-will doctrine to which respondent devotes much argument in its brief is not at issue in this case. There is no doubt, as respondent argues, that an employer may discharge an employee, who is not subject to a contract of employment for a definite term, at any time with or without cause, provided no statutory provision is violated. *Amaan v. City of Eureka*, 615 S.W.2d 414 (Mo. banc) *cert. denied*, 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981). In this case, however, the claim by appellant is based on his allegation that the terms of his employment included the Disciplinary Action Policy And Procedure set out in the employees' handbook and, to the extent that policy bound the respondent not to discharge an employee without first giving a verbal warning, a written notice of probation and the right of appeal to the Personnel Department, his employment was assured for the term of those proceedings. The question is whether respondent voluntarily relinquished its entitlement to discharge employees at will when it issued the handbook purporting to define a procedure applicable before an employee could be terminated from respondent's employment.

Also to be addressed before moving to the substance of appellant's point on appeal is respondent's contention that even if the handbook provisions restrict the free right of respondent to discharge employees, appellant has no entitlement to claim the benefits of the provisions. This follows, respondent says, because the handbook was issued after appellant had commenced work for respondent's affiliate. Appellant could therefore not have relied on the provisions in accepting employment and the petition makes no allegation of reliance or change of position. Moreover, respondent says there is no petition allegation that delivery of the handbook to appellant was accompanied by any assurance from respondent that the conditions could be observed in his case.

■ *Arie v. Intertherm, Inc.*, 648 S.W.2d 142 (Mo.App.1983), a case also in-

volving an employee handbook, is cited by both parties. There the court held such a document to create contractual rights in the employee without evidence of mutual agreement to this effect and despite the fact that the terms of the handbook could be unilaterally amended by the employer without notice and despite the fact that the handbook made no reference to a specific employee or job description. *Arie* supports the conclusion that a unilateral undertaking of this nature creates the equivalent of a contract with those employees who come within its provisions and to whom it is made known even though mutuality in the usual contract sense is absent.

Respondent seeks to distinguish *Arie* on the ground that the employee there was given the handbook when she was hired whereas appellant was already in respondent's employ when the handbook was issued effective June 15, 1980. The case cited in *Arie,* and in almost every other case decided since 1980 on the subject, is *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980). The court in *Toussaint* held employer statements of policy contained in a Blue Cross Supervisory Manual and Guidelines could give rise to contractual rights in employees even though no reference was made to the manual in pre-employment interviews and the employee did not learn of the existence of the manual until after he was hired. *Toussaint,* 408 Mich. at 614–615, 292 N.W.2d at 892.

 In summary, we conclude the law to be that if an employer elects to establish policies in its relations with employees and publishes those policies in a document distributed to employees, the employer is contractually bound to observe those policies until they are modified or withdrawn. The entitlement of the employee to enforce observance of the policies does not depend on any express agreement mutually announced or the naming of a particular employee or job description. All employees comprising the work force when the policies are adopted as well as those later hired while the policies are in force are equally entitled to require adherence by the employer to the terms and provisions of employment policy appearing in the published statement. Appellant's case here is not diminished merely because of the fact that he was already in the employment of respondent's affiliate when the employee handbook was distributed.

Turning now the principal point of contention, appellant argues that according to the handbook, he was entitled to at least a three step process before discharge, that is, a verbal warning, probation or suspension and an appeal to the personnel department. Implicitly, of course, this process would have informed appellant of the deficiencies in his work and would have provided him an opportunity to remedy any conduct which placed his job in jeopardy. We do not take it from the argument that appellant claims any ultimate restriction on respondent's sole right to terminate appellant's employment, only a contractual undertaking by respondent to follow the handbook procedures before exercising the arbitrary right to discharge. Respondent, to the contrary, contends a "reasonable reading" of the handbook provisions demonstrates that they create no legitimate expectation of rights and that respondent retained complete discretion to terminate employees without observing any of the procedures or policies set out in the handbook.

 The foregoing indicates that a primary disagreement in this case is what meaning shall be ascribed to the statements in the employee handbook. Of course, the mere fact that the parties disagree on the subject does not render the document itself ambiguous. The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person. *Lehman Bros. Kuhn Loeb Inc. v. Clark Oil & Refining Corp.,* 739 F.2d 1313 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). Whether a contract is ambiguous is

a question of law for the court. *Von Seggern v. 310 West 49th Street, Inc.*, 631 S.W.2d 877 (Mo.App.1982).

■ In considering whether the respondent's employee handbook is ambiguous and thus, whether appellant is entitled to proceed further in this suit, we are guided by two propositions. The first is that on a motion to dismiss for failure to state a claim, the plaintiff's petition is to be broadly construed in his favor giving him the benefit of inferences arising from the facts. If the allegations invoke principles of substantive law which may entitle the pleader to relief, the petition is not to be dismissed. *Niemczyk v. Burleson*, 538 S.W.2d 737, 742 (Mo.App.1976). The second proposition is that where an employer prepares a contract or offer to contract with his employees, all ambiguities in the instrument are to be resolved strongly against the employer. If the employer chooses words having more than one meaning, the courts will construe the language in favor of the employee. *Hinkeldey v. Cities Services Oil Company*, 470 S.W.2d 494, 500 (Mo.1971).

■ Tested by these standards, it is obvious from the minimal excerpts quoted above that respondent's employee handbook is ambiguous in the particulars of what circumstances and what employees are covered by the procedural steps self imposed by respondent as conditions to its exercise of the right of discharge. The handbook cannot be readily applied to answer the question. In this situation, the contract must be construed with due regard to the intent of the parties as demonstrated by all of the evidence which bears on the issue. *N.B. Harty General Contractors, Inc. v. West Plains Bridge and Grading Co., Inc.*, 598 S.W.2d 194, 197 (Mo.App.1980). The necessity for evidence of course precludes a defendant, and respondent here, from procuring a dismissal on the basis of a motion directed to a petition which seeks to enforce an ambiguous contract. The trial court erred in ordering the petition dismissed on the stated ground in the motion that no cause of action was pleaded.

Because of the necessity to remand this case for further proceedings, some comment on prospective trial procedures is appropriate. In the following, we borrow liberally from the discussion in *Busch & Latta Painting v. State Highway Commission*, 597 S.W.2d 189 (Mo.App.1980), commencing at 197.

Respondent's employee handbook, pages 15 and 15A contains patent ambiguities, that is, from the contents it cannot be determined what conduct entitles an employee to warnings before he is discharged and, more generally, to what degree respondent has limited its right to terminate employees under the employment-at-will doctrine. If, as respondent contends, the warning procedure is not obligatory as a prelude to discharge, the document itself at least limits peremptory discharge to "extreme cases". But there is no indication as to what conduct amounts to an extreme case and therefore no test may be made to measure appellant's right to warnings until the intent expressed in this language is supplied. Extrinsic evidence is needed.

■ At some point in the progress of the case, it will be necessary for the court to determine whether the ambiguity in the handbook is to be construed by the court or whether appellant is entitled to have that decision made by a jury, assuming no other defense which defeats respondent's claim has intervened. Appellant will be entitled to a jury if the evidence bearing on the construction issue is conflicting or, if different conclusions might reasonably be drawn from evidence which is not in conflict. If there is no real conflict in the evidence and the meaning of the handbook is made clear by the evidence, the construction of the handbook provisions is to be declared by the court.

The judgment dismissing plaintiff's petition is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.