Sherrill JOHNSON, Plaintiff–Appellant,

v.

McDONNELL DOUGLAS CORPORA-
TION, Defendant–Respondent.

No. 69689.

Supreme Court of Missouri,
En Banc.

Feb. 17, 1988.

Rehearing Denied March 15, 1988.

John D. Lynn, Michael J. Hoare, St. Louis, for plaintiff-appellant.

Thomas C. Walsh, Michael P. Burke, Elizabeth C. Carver, St. Louis, for defendant-respondent.

BILLINGS, Chief Justice.

Plaintiff Sherrill Johnson brought an action for wrongful discharge against defendant McDonnell Douglas Corporation in the Circuit Court of the City of St. Louis. She appeals from an order of that court granting summary judgment to the defendant. The Missouri Court of Appeals, Eastern District, reversed. Transfer was granted to decide whether there is a "handbook exception" to the employment at will doctrine in Missouri. This Court declines to adopt such an exception and recognizes

the continued validity of employment at will. Affirmed.

The facts in this case were stipulated by the parties. Sherill Johnson began her employment as a clerk with McDonnell Douglas on April 14, 1970. On July 18, 1979, she received a written reprimand known as an Employee Incident Report. The report, among other things, cited the plaintiff for chronic tardiness and absenteeism in violation of Rule 13 of the company's employee handbook. This handbook, distributed to McDonnell employees including the plaintiff, listed 42 rules and regulations, the violation of which constituted cause for discipline or discharge.

On August 16, 1979, another report was issued to Johnson denoted as a Notice of Probation. It stated, in part, that any absences during a four-month probationary period would result in termination, although the company would consider "extenuating circumstances". Plaintiff refused to sign this notice. On December 5, 1979, plaintiff was absent from work to attend a deposition in a civil suit in which she was a party. She was discharged on December 6 for violating the terms of her probation and for violating Rule 13 of the company handbook proscribing repeated absences and tardiness.

Plaintiff filed a two-count complaint in July 1982 alleging that her discharge (1) breached an employment contract between herself and McDonnell Douglas, and (2) gave rise to a *prima facie* tort. The circuit court granted defendant's motion for summary judgment on both counts. Johnson only appeals on count I.

Summary judgment is inappropriate unless the prevailing party has shown by unassailable proof that he is entitled to judgment as a matter of law. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987); *Rule 74.04(h)*. Where the trial court's decision was based on stipulated facts, the only question for this Court is whether the trial court drew the proper legal conclusions from the facts stipulated. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979).

"Under Missouri's employment at will doctrine an employer can discharge—for cause or without cause—an at will employee who does not otherwise fall within the protective reach of a contrary statutory provision and still not be subject to liability for wrongful discharge." *Dake v. Tuell*, 687 S.W.2d 191, 193 (Mo. banc 1985); *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 (Mo. banc 1981), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981). In *Dake*, this Court concluded that for an at will employee to state a claim for wrongful discharge, he must plead "the essential elements of a valid contract, and a discharge in violation thereof." *Dake* at 193 (quoting *Maddock v. Lewis*, 386 S.W.2d 406, 409 (Mo.1965), *cert. denied*, 381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688 (1965)).

The essential elements of a valid contract include offer, acceptance, and bargained for consideration. *Thacker v. Massman Construction Co.*, 247 S.W.2d 623, 629 (Mo.1952); *National Refining Co. v. McDowell*, 201 S.W.2d 342, 347 (Mo.1947); *Restatement of Contracts 2d Section 17* (1981). None of these elements are present in this case. McDonnell's unilateral act of publishing its handbook was not a contractual offer to its employees. The handbook was merely an informational statement of McDonnell's self-imposed policies, providing a nonexclusive list of acts for which an employee might be subject to discipline. Several of the rules and regulations in the handbook were couched in general terms and were open to broad discretion and interpretation. The handbook also provided that the rules were subject to change at any time. Given the general language of the handbook and the employer's reservation of power to alter the handbook, a reasonable at will employee could not interpret its distribution as an offer to modify his at will status. *See Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830, 837–839 (1986), *app. denied*, 514 Pa. 643, 523 A.2d 1132 (1987). An employer's offer to modify the at will status of his employees must be stated with greater definiteness and clarity than is found here. *Cottonseed Delinting Corp. v. Roberts Brothers, Inc.* 218 S.W.2d 592, 594 (Mo.

1949); *Osage Homestead, Inc. v. Sutphin*, 657 S.W.2d 346, 352 (Mo.App.1983). Since McDonnell Douglas made no offer to its employees, no power of acceptance was created in the plaintiff.

■ This Court concludes that no contract was formed between the plaintiff and the defendant on the basis of the employee handbook. Absent a valid contract of employment between the parties, plaintiff as an at will employee could be discharged for cause or without cause. *Dake v. Tuell*, 687 S.W.2d 191, 193 (Mo. banc 1985). Plaintiff has no cause of action for wrongful discharge as a matter of law.

■ Plaintiff also contends that a valid contract, altering her at will status, was created by McDonnell's August 16 probation notice. Once again, however, the elements of contract formation are lacking. The probation notice was an unilateral expression of McDonnell's intention to discharge plaintiff if she failed to meet certain conditions. This Court concludes that the probation notice issued by McDonnell Douglas failed to create a valid contract of employment and plaintiff remained an at will employee.

■ Plaintiff asserts for the first time on appeal that she was wrongfully discharged in violation of public policy. The Court does not deem it necessary to engraft a so-called "public policy" exception onto the employment at will doctrine. In the cases cited by plaintiff the employee had the benefit of a constitutional provision, a statute, or a regulation based on a statute. *See Smith v. Arthur C. Baue Funeral Home*, 370 S.W.2d 249 (Mo.1963) (discharge of an employee for asserting the constitutional right to choose collective bargaining representatives); *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo.App. 1985) (employee discharged for refusing to violate federal Food and Drug Administration regulations); *Beasley v. Affiliated Hospital Products*, 713 S.W.2d 557 (Mo. App.1986) (employee discharged for refusing to violate false advertising and federal mail fraud statutes). No statute, regulation based on a statute, or constitutional provision is implicated here.

Judgment is affirmed.

DONNELLY, WELLIVER, ROBERTSON, RENDLEN and HIGGINS, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

BLACKMAR, Judge, dissenting.

I agree that the broad holding of *Dake v. Tuell*, 687 S.W.2d 191 (Mo. banc 1985), precludes the recognition of a privilege to absent oneself from work in order to give testimony. It is of no significance that the point was raised for the first time on appeal. A party against whom summary judgment is rendered may advance for reversal any legal argument that is supported by the record. Summary judgment is a drastic remedy, and the presumption is in favor of trial in the usual manner. Sensing no sentiment on the part of the court to retreat from *Dake v. Tuell, supra,* however, I can see no basis for holding that an at will employee may challenge a discharge when absent to give testimony.

I do not agree with the Court's disposition of the contract issue. The principal opinion gets off on the wrong foot by characterizing the issue as whether a "handbook" exception to *Dake v. Tuell* should be recognized. This is not the question. The question is whether the respondent has shown by unassailable proof that the plaintiff-appellant has no contract rights. *Dake v. Tuell* states a rule that applies only in the absence of contract rights.

We may take judicial notice of the vast McDonnell–Douglas complex. There are many thousands of employees in Missouri. A substantial number are represented by various unions which have negotiated collective bargaining agreements with the employer. The remainder, including the plaintiff, are euphemistically known as "Free Enterprise Personnel." The question is whether employees in this latter classification have any contractual rights to continued employment.

The "handbook" consists of 27 pages. It is designed for distribution to all employees, whether or not they are represented by unions. At some places the handbook lists certain benefits such as vacations and holidays, and goes on to say that the benefits for unionized employees are defined in their collective bargaining agreements. The handbook clearly has a contractual aspect as to other employees.

The handbook begins by describing company policy. Among the listed policies are the following:

> To provide security of employment, the means for security after retirement.

> \*   \*   \*   \*   \*   \*

> To provide experienced counseling which can provide confidential advice regarding work or personal problems.

Under JOB ADVANCEMENT, the handbook provides:

> Opportunities for promotion at McDonnell Douglas are excellent, because we fill as many jobs as possible from our ranks. . . .

> Pay reviews for free enterprise personnel (salaried new-supervisory, supervisory, and hourly personnel not affiliated with collective bargaining units) are held periodically. . . .

The handbook then deals with PROBATIONARY WORK PERIOD, in the following terms:

> All new employees work on a probationary basis before becoming permanent employees. The probationary period for FEP hourly personnel [the plaintiff's category] is ninety calendar days. For employees covered by union contract, the probationary work period is set forth in the contract. . . .

Then follows a lengthy discussion of "employee benefits." Significant are the following:

VACATIONS

> You will receive vacation with pay at your applicable rate at the time the vacation is taken. If you are a member of a Collective Bargaining Unit your vacation is governed by the applicable union agreement.

> Free Enterprise Personnel earn one week vacation for each six months of continuous service. After nine years, this is extended to one week vacation for each four months' of continuous employment. . . .

> \*   \*   \*   \*   \*   \*

The handbook, finally, lists 42 "Rules and Regulations," violation of which "will be cause for discipline, up to and including discharge." The section concludes as follows:

> These rules are subject to change at any time. Any management bulletins or directives issued after the date hereon which alter this list will take precedence.

An examination of the handbook as a whole gives the sense that the company holds out to the employees an employment relationship of permanence and durability. The specification of a "probationary period" would be meaningless if the employer were free to discharge any employee at any time for any reason. The provisions for vacations and holidays are inconsistent with the holding that the language of the handbook confers no contractual benefits. The principal opinion observes that the employer has reserved the right to change the disciplinary rules at any time. This circumstance supports the contractual nature of the handbook, rather than shoring the principal opinion. The reservation would not be necessary if the handbook had no legal significance.

The handbook, then, may be properly regarded as a continuing offer of employment, on the terms there stated. Employees accept the employer's offer as they show up for work each day. Continued employment may provide cumulative benefits. After 90 days the employee's status changes. He is no longer probationary. By keeping at work, the employee may accrue vacation time. Surely it would not be argued that the employer could cancel its entire vacation entitlements for all except union employees.

It is perfectly possible for an employer to enter into a contract with his employees, in which the employer promises continued em-

ployment, so long as business circumstances permit, and agrees to discharge only for cause. Most contracts negotiated with unions are of this nature. There is no reason why a similar contract could not be entered into with unorganized employees.

It makes no difference that the handbook does not expressly restrict discharge to "good cause." The specification of grounds for discipline, the reservation of the right to modify there, and the provision for probationary period, all are consistent with the employer's having voluntarily limited its absolute right of discharge.

The claim of contractual right is fortified by the probationary letter. By the holding of the principal opinion, the letter is without meaning. But in the letter the employer specified the conditions under which it would allow the plaintiff to continue in its employ. The specification of the probationary period, standing alone, might be viewed simply as a reinstitution of the 90–day period specified in the handbook. The employer, however, expressly undertook to consider "extenuating circumstances." The plaintiff was entitled to rely on the letter, and to assume that she had some protection against the employer's unfettered right to discharge. Contractual rights are seldom left to the unbridled discretion of one party.

*Maddock v. Lewis,* 386 S.W.2d 406 (Mo. 1965), *cert. denied* 381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688 (1965), far from having the effect attributed to it by the employer, actually supports my position in recognizing that an employer may by suitable language bind itself to discharge only for cause. That particular case affirmed a summary judgment for the employer by construing the contract there in issue as not limiting the right to discharge. That document is quite different from the one now before us, especially as to the probationary period and detailed specification of grounds for discharge.

*Dake v. Tuell, supra,* does not deal with contract issues at all. Several appeals cases since *Dake v. Tuell* support the plaintiff's position.[1] Recent decisions from other jurisdictions indicate that the principal opinion is at variance with the weight of modern authority.

The prevailing theory is well stated in *Thompson v. American Motor Inns Inc.,* 623 F.Supp. 409 (D.C.Va.1985), in the following language:

> [employer] through its employee handbook is seeking performance of duties in accordance with its stated goals. To induce the employees to carry out their duties in the manner desired by AMI, AMI has spelled out terms and conditions of employment and promised fair treatment and additional benefits. From the tenor of the language in the employee handbook, AMI has created an implied unilateral contract to govern the working relationship between it and its employees.[2]

---

1. In *Matthews v. Federal Land Bank of St. Louis,* 718 S.W.2d 220 (Mo.App.1986), the court held that an employee handbook containing policy statements and rules of employment altered the "at will" status of the employee and created enforceable contractual rights. Likewise, in *Gavan v. Madison Memorial Hospital,* 700 S.W.2d 124, 127 (Mo.App.1985), the court held that the employee handbook "created contractual rights in the employee without evidence of mutual agreement to this effect and despite the fact that the terms could be unilaterally amended by the employer without notice." *See also, Arie v. Intertherm,* 648 S.W.2d 142, 143, 153 (Mo.App. 1983); *Enyeart v. Shelter Mutual Ins. Co.,* 693 S.W.2d 120 (Mo.App.1985).

2. *See also, Smith v. Kerryville Bus Co.,* 709 F.2d 914, 920 (5th Cir.1983) (bus drivers' rule book which listed reasons for discharge created reasonable inference that any discharge would be for cause); *Pudil v. Smart Buy Inc.,* 607 F.Supp. 440, 443 (D.C.Ill.1985) (under Illinois Law, where the [employee] manual imposes obligations on both employer and employee [i.e. provisions on employee evaluation, holiday, sick leave, vacation policies, etc.] the employer is bound by the manual); *Mobil Coal Producing Inc. v. Parks,* 704 P.2d 702, 707 (Wyo.1985) ("The handbook's provisions change the appellant's unfettered right to discharge appellee at any time and without cause. Such provisions create an expectation on the part of an employee that they will be followed, and they induced appellee to continue his employment with appellant"); *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983) ("An employer's offer of a unilateral contract may very well appear in a personnel handbook as the employer's response to the practical problems of transactional costs."). *See generally,* Annot. *Right to*

I strongly disagree with the statement in the principal opinion that the plaintiff had no right to rely on the handbook as an offer for the making of a contract. The employer could have chosen any language it wanted to, and it chose language clearly indicating that the handbook was to have some meaning. The employer necessarily assumed that employees would rely on the handbook.

The employer, of course, could have avoided any problem by including language such as, "anything in this handbook to the contrary notwithstanding, the employer reserves the right to terminate the service of any employee at any time and for any reason satisfactory to the employer, except to the extent that a union collective bargaining agreement provides otherwise." The employer argues that the effect of this language should be read into the handbook, when it did not put it there. I rather suspect that the omission was advised rather than inadvertent. Most employers want to avoid unionization of their employees. One of the benefits of organization is protection against arbitrary discharge. This employer wants its unorganized employees to think that they enjoy the substantial benefits of unionization. It wants to emphasize the permanence of the employment relationship, rather than the possibility of discharge. The employees should be protected in relying on the expectations the employer sought to induce.

So the Court should not turn the plaintiff out of court on a summary judgment. The judgment of dismissal should be reversed and the case remanded for further proceedings, in which the plaintiff may attempt to establish contract rights under the handbook. Because the Court simply affirms the summary judgment there is no need for me to write in detail as to the nature of the plaintiff's remedy, or what she must establish to have any remedy at all. It cannot be said that the defendant has shown by unassailable proof that the plaintiff has no

*Discharge Allegedly "At Will" Employee as Affected by Employer's Promulgation of Employment*

remedy, and that is enough to require reversal of a summary judgment.

*Policies as to Discharge,* 33 A.L.R.4th 120, § 4.