**Larry LINK, Plaintiff,**

v.

**K–MART CORPORATION, Defendant.**

**No. 87–4206–CV–C–9.**

United States District Court,
W.D. Missouri, C.D.

June 30, 1988.

Thomas H. Rost, Rost & Callahan, Jefferson City, Mo., for plaintiff.

J. Kent Lowry, Jefferson City, Mo., John J. Moellering, Curtis C. Calloway, St. Louis, Mo., for defendant.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT I, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT II, AND ALLOWING PLAINTIFF 20 DAYS TO FILE MOTION FOR LEAVE TO FILE MOTION TO AMEND

BARTLETT, District Judge.

This action arises from defendant K-Mart Corporation's (K-Mart) discharge of plaintiff Larry Link on December 10, 1985. Plaintiff has filed a two-count complaint asserting that under Missouri law he was wrongfully discharged in violation of the public policies of Missouri. Plaintiff also asserts that statements contained in employee handbooks, as well as those orally made to him by K-Mart personnel, created

contractual rights in employment that were breached by the discharge. K-Mart filed a motion to dismiss or, in the alternative, for summary judgment on both counts of the complaint. While K-Mart's motion was still under advisement, the Missouri Supreme Court issued *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661 (en banc 1988), a decision addressing the so-called "public policy" and "handbook" exceptions in Missouri. Therefore, in an order dated March 4, 1988, I directed the parties to address what effect, if any, *Johnson* has on K-Mart's motion. Both parties have submitted responses to my order.

## Count I

In Count I plaintiff asserts a claim for wrongful discharge "under the public policy exception to the employment at will doctrine, enumerated in *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo.App. 1985)." In paragraph eight of his complaint, plaintiff alleges:

In acting as alleged herein defendant K-Mart discharged plaintiff or, alternatively forced plaintiff to resign, in violation of fundamental public policies of the State of Missouri, in the following respects among others:

Terminating plaintiff for reporting the illegal acts by supervisory personal [sic] to-wit: misuses and thefts of company telephone services by manager, Jim Brunette, merchandise manager W. Kieckhafer, and assistant manager, Dodson; misuse and theft of merchandise by assistant manager Dodson; misuse and theft of food merchandise by merchandise manager Kieckhafer.

K-Mart argues that these allegations fail to state a claim under the public policy exception because no federal or state constitutional, statutory or regulatory provision is alleged to have been violated by plaintiff's discharge. According to K-Mart, the allegations in Count I "amount to nothing more than a questioning of the internal policies of K-Mart with respect to the rights of its management personnel."[1]

---

1. K-Mart also suggests that Count I "could be construed as a claim for breach of an implied

Plaintiff responds that Count I states a claim for relief under the public policy exception because "[t]heft of merchandise from a retail store is obviously a crime (also known as stealing) both in the State of Missouri and the City of Jefferson. Such crimes are not mere internal disputes." Alternatively, plaintiff seeks leave to amend his complaint to add an additional allegation that he was fired for reporting to his superiors violations by K–Mart of Occupational Safety and Health Administration regulations.

In ruling a motion to dismiss, the court must accept the allegations of the pleadings as true. *Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). "A court may dismiss a [claim] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.*

In Missouri, "in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such cases no action can be obtained for wrongful discharge...." *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 (Mo. banc 1981), *quoting Christy v. Petrus*, 295 S.W.2d 122, 124 (Mo. banc 1956); *see also Dake v. Tuell*, 687 S.W.2d 191, 193 (Mo. banc 1985).

In *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo.App.1985), the Court of Appeals expressly recognized for the first time in Missouri a "narrow" "public policy exception" to the employment at will doctrine.[2] In *Boyle*, plaintiff alleged that she was wrongfully discharged for warning her employer that she would notify the federal Food and Drug Administration about the employer's failure to comply with federal regulations requiring the hardening and testing of eyeglass lenses. 700 S.W.2d at 877. The employer moved to dismiss plaintiff's claim contending that because she was an at will employee, plaintiff did not have a cause of action for wrongful discharge absent a contract for employment or statutory authority. The trial court granted the motion and dismissed plaintiff's claim. *Id.* at 862.

The Court of Appeals reversed. After reviewing the development of the "public policy" exception in other jurisdictions (*see id.* at 872–76), the court stated:

[W]here an employer has discharged an at-will employee because that employee refused to violate the law or any well established and clear mandate of public policy as expressed in the constitution, statutes and regulations promulgated pursuant to statute, or because the employee reported to his superiors or to public authorities serious misconduct that constitutes violations of the law and of such well established and clearly mandated public policy, the employee has a cause of action in tort for damages for wrongful discharge.

*Id.* at 878.

Turning to the allegations in plaintiff's petition, the court concluded that the regulation plaintiff's employer allegedly violated was a "clear mandate of public policy" because it prescribed "a process of manu-

covenant of good faith and fair dealing, *i.e.,* that plaintiff would not be discharged except for 'good cause.' " K–Mart argues that in Missouri there is no cause of action for breach of an implied covenant of good faith and fair dealing in the employment setting. Defendant's motion to dismiss or for summary judgment at pp. 4–5.

In his suggestions in opposition to defendant's motion, plaintiff states that in Count I "a claim is stated [under] the 'public policy' exception to the employment-at-will doctrine." In his response to the March 4, 1988, order, plaintiff repeats this position: "Count I of plaintiff's complaint is based on the public policy exception to the employment at will doctrine...."

Therefore, based on plaintiff's representations that Count I of the complaint does not allege a claim for wrongful discharge based on breach of an implied covenant of good faith and fair dealing, I will not address K–Mart's argument that Count I should be dismissed because such a claim cannot be asserted in Missouri.

2. The exception had previously been applied in *Smith v. Arthur C. Baue Funeral Home*, 370 S.W.2d 249 (Mo.1963) and *Hansome v. Northwestern Cooperage*, 679 S.W.2d 273 (Mo.1984). However, when those cases were decided, the public policy exception was still "newborn," "unnamed" and "undeveloped." *Boyle*, 700 S.W. 2d at 875.

facturing eyeglasses which was designed to give eyeglass wearers maximum protection against eye injuries and blindness." *Id.* at 876. The court stated that the "federal regulation clearly imposes upon defendants as manufacturers a *positive duty* to harden and test each glass lens they manufacture." *Id.* (emphasis added). The court concluded that the allegations in plaintiff's petition stated a claim for relief under the public policy exception because plaintiff alleged that she was fired for warning defendants that she would notify the FDA of their "illegal practices," i.e., violating "the positive duty laid upon them by the federal regulation." *Id.* at 877.

In *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661 (Mo. banc 1988), the primary issue was whether there is a "handbook exception" to the employment at will doctrine in Missouri. After reaffirming the "continued validity of employment at will" in Missouri, and after resolving the handbook exception issue, the court discussed plaintiff's claim that she had been wrongfully discharged in violation of public policy. *Id.* at 663. "The Court does not deem it necessary to engraft a so-called 'public policy exception' onto the employment at will doctrine." *Id.* Nevertheless, the court did not overrule the decisions, including *Boyle,* that had recognized a claim for wrongful discharge in violation of public policy. The court concluded its discussion of this point by observing simply "[n]o statute, regulation based on a statute, or constitutional provision is implicated here." *Id.*

Here also the essential allegations of plaintiff's wrongful discharge claim in Count I are deficient because plaintiff has not "implicated" any statute, regulation or constitutional provision. Under *Boyle,* plaintiff must allege that he was disciplined for reporting either to his supervisor or to a public agency violations of a well established and clear public policy that places a positive duty upon K–Mart. *See* 700 S.W. 2d at 876–77. Vague reference to "theft" and "misuse" *of K–Mart's own property* are insufficient to state a claim under the "narrow" public policy exception. Accordingly, defendant's motion to dismiss Count I will be granted. However, plaintiff may file within 20 days from the date of this order a motion seeking leave to file an amended complaint.

## Count II

In Count II plaintiff asserts a claim for breach of contract on the basis of K–Mart's failure to follow its own disciplinary procedures before firing plaintiff. In his complaint plaintiff alleges that K–Mart had a "policy of extending employment and benefits on the basis of an employee's good performance" (¶ 2); that K–Mart's "adoption of disciplinary procedures to be followed before an employee can be disciplined created a contract binding on [K–Mart]" (¶ 2); and that "K–Mart breached the express and implied promises made orally, and in writing to plaintiff, and relied on by plaintiff, at the time of the commencement of his employment and continued employment." ¶ 3.

K–Mart argues that Count II should be dismissed because in the absence of a union or individual employment contract with a "just cause" termination provision, plaintiff was an at will employee and could be fired at anytime for any reason. Further, K–Mart argues that the K–Mart employee handbook does not give rise to any contract rights in employment. K–Mart points out that the handbook contains explicit language that its provisions are not intended either to create a contractual relationship or to change plaintiff's at will employment status. According to K–Mart, this language nullifies any claim for contract rights based on the handbook's provisions.

Plaintiff responds even if the handbook contains language disclaiming contract rights, K–Mart was still required to follow its own "chosen" personnel policies and practices set forth in that handbook. Alternatively, plaintiff denies that he received the handbook referred to by K–Mart. Plaintiff argues that he received a different handbook containing disciplinary procedures that K–Mart failed to follow before discharging him.

Because K–Mart and plaintiff both rely on matters outside the pleadings, the motion will be treated as a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. *See* Rule 12(b), Federal Rules of Civil Procedure.

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

In *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d at 662 the court stated:

In *Dake [v. Tuell*, 687 S.W.2d 191, 193 (Mo. banc 1985)], this Court concluded that for an at will employee to state a claim for wrongful discharge, he must plead "the essential elements of a valid contract, and a discharge in violation thereof."

The essential elements of a valid contract include offer, acceptance, and bargained for consideration. None of these elements are present in this case. McDonnell's unilateral act of publishing its handbook was not a contractual offer to its employees. The handbook was merely an informational statement of McDon-

nell's self-imposed policies, providing a nonexclusive list of acts for which an employee might be subject to discipline. Several of the rules and regulations in the handbook were couched in general terms and were open to broad discretion and interpretation. The handbook also provided that the rules were subject to change at any time. Given the general language of the handbook and the employer's reservation of power to alter the handbook, a reasonable at will employee could not interpret its distribution as an offer to modify his at will status. An employer's offer to modify the at will status of his employees must be stated with greater definiteness and clarity than is found here. Since McDonnell Douglas made no offer to its employees, no power of acceptance was created in the plaintiff.

This Court concludes that no contract was formed between the plaintiff and the defendant on the basis of the employee handbook. Absent a valid contract of employment between the parties, plaintiff as an at will employee could be discharged for cause or without cause. Plaintiff has no cause of action for wrongful discharge as a matter of law.

745 S.W.2d at 662–63 (citations omitted).

█ Here, K–Mart has established by affidavit that an Employee Handbook dated January 1985, was in effect when plaintiff was terminated. This Employee Handbook contained the following provisions:

> The policies and benefits described in this handbook are not intended to be conditions of employment and K–Mart reserves the right to alter, modify, amend or terminate these policies and benefits. Irrespective of any statement contained herein or in any other document or statement issued by K–Mart or any of its representatives, your employment is not guaranteed for any length of time and either the employee or the Company can terminate the relationship at will at any time with or without cause. No employee of K–Mart other than the Vice President of Personnel has the authority to enter into any contrary agreement.

*See* Affidavit of Harold Dodson at ¶ 4 and Exhibit 1 at p. 18.

Plaintiff has not properly established under Rule 56 that he had a written contract with K–Mart providing "disciplinary procedures" before he could be terminated. Plaintiff does state by affidavit that when he was hired, he received an Employee Benefits booklet describing insurance programs, leave policies, the employee stock purchase incentive plan, etc. Nothing in this booklet supports plaintiff's claim that K–Mart had promised him the benefit of certain procedures before termination. Furthermore, plaintiff does not properly contest under Rule 56 that the Employee Handbook relied upon by K–Mart was in effect at the time of termination. Also, plaintiff does not properly establish under Rule 56 that some other employee handbook had been in effect earlier that promised plaintiff certain procedures before termination.

Plaintiff states in his affidavit that he attended an employee meeting in January or February 1985, and no Employee Handbook was distributed or discussed. Plaintiff acknowledges in his affidavit that "in October and/or November 1985" portions of the Employee Handbook were discussed at an employee meeting at the Jefferson City K–Mart store. The Employee Handbook was distributed to employees "until the end of the meeting at which time each employee was asked to return it." (Plaintiff does not state in his affidavit that this handbook was other than the one relied upon by K–Mart.)

Finally, plaintiff has not properly presented under Rule 56 any factual support for his contention that he was promised orally the benefit of certain disciplinary procedures prior to termination.

Therefore, plaintiff has not established under Rule 56 a dispute of material fact over what disciplinary procedures applied to his employment in December 1985. The only information about disciplinary procedures that has been properly presented under Rule 56 is found in the Employee Handbook dated January 1985. Read in its entirety the provisions of this Employee

988

Handbook do not constitute an offer. Particularly in light of K–Mart's explicit "reservation of power to alter the handbook, a reasonable at will employee could not interpret its distribution as an offer to modify his at will status." *See Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d at 662.

Accordingly, no contract was formed between plaintiff and K–Mart as the result of the provisions of the Employee Handbook. Without a contract, plaintiff was an at will employee and could be discharged for cause or without cause. Plaintiff has no cause of action for wrongful discharge as a matter of law.

### Order

For the reasons stated, it is hereby ORDERED that:

1) defendant's motion to dismiss Count I of the complaint is granted;

2) defendant's motion for summary judgment on Count II of the complaint is granted; and

3) within 20 days from the date of this order, plaintiff may file a motion requesting leave to file a motion to amend the pleadings.