Robert E. ENYEART,
Plaintiff–Appellant,

v.

**SHELTER MUTUAL INSURANCE COM-
PANY, Defendant–Respondent.**

**No. WD 41953.**

Missouri Court of Appeals,
Western District.

Dec. 12, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 30, 1990.

Application to Transfer Denied
March 13, 1990.

Michael W. Manners, Independence, for plaintiff-appellant.

Jack L. Whitacre, Kansas City, for defendant-respondent.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

WASSERSTROM, Senior Judge.

Plaintiff appeals from a summary judgment ordered in the trial court in favor of defendant. We affirm.

Plaintiff was employed by defendant's affiliate and later by defendant itself as a district sales manager. He had no contract for any specific term, but upon employment he received a document referred to by plaintiff as an "employees handbook" and by defendant as an "information booklet." From time to time thereafter, plaintiff received changes in the handbook, adopted in each instance unilaterally by defendant.

One section of the handbook is entitled "Disciplinary Action Policy and Procedure." That section provides generally for forms of progressive discipline, grounds for discipline, and procedures to be followed in connection with discipline. In 1982, plaintiff was discharged in what he claims to be violation of the rules prescribed by the handbook, and he filed suit for money damages.

The original petition was dismissed in the circuit court on the ground that plaintiff's petition failed to state a claim upon which relief could be granted. Plaintiff appealed that ruling, and this court reversed and remanded in *Enyeart v. Shelter Mutual Insurance Company*, 693 S.W.2d 120 (Mo. App.1985), that decision being referred to hereinafter as *Enyeart I*.

On remand, certain discovery was conducted by the parties, after which defendant moved for summary judgment. The trial court granted that motion, from which action plaintiff pursued the present appeal.

Plaintiff's points on appeal in summarized form are that: (1) the trial court improperly and without authority disregarded the law of the case as established by *Enyeart I;* and (2) the trial court erroneously ruled that *Enyeart I* has been overruled by *Johnson v. McDonnell Douglas Corporation*, 745 S.W.2d 661 (Mo. banc

1988). Those points will be discussed in reverse order.

## I.

### *Effect of the Decision in Johnson*

Plaintiff argues that *Enyeart I* established that he has a cause of action and should have been followed by the trial court. The trial court ruled to the contrary on the ground that *Johnson,* which was decided subsequently to *Enyeart I,* overruled *Enyeart I* and controls over *Enyeart I.*

In response to the trial court's reliance on *Johnson,* plaintiff seeks to distinguish that decision on the ground that *Johnson* ruled only that an employee handbook cannot limit an employer's freedom to discharge an at will employee with or without cause. Plaintiff says that in contrast, *Enyeart I* acknowledged that right by an employer but merely held that the handbook did establish certain procedures which defendant was obligated to follow in order to exercise its right of discharge.

■ The distinction sought to be drawn by plaintiff carries no persuasion. The basis for the *Johnson* decision is that an employee's handbook, unilaterally adopted by the employer and subject to its unilateral amendment, does not establish a contract between the employer and employee. In this respect *Johnson* states at l.c. 662:

> McDonnell's unilateral act of publishing its handbook was not a contractual offer to its employees. The handbook was merely an informational statement of McDonnell's self-imposed policies, providing a nonexclusive list of acts for which an employee might be subject to discipline. Several of the rules and regulations in the handbook were couched in general terms and were open to broad discretion and interpretation. The handbook also provided that the rules were subject to change at any time. Given the general language of the handbook and the employer's reservation of power to alter the handbook, a reasonable at will employee could not interpret its distribu-

tion as an offer to modify his at will status.

*Enyeart I* had adopted a contrary position. *Enyeart I* held at l.c. 123 as follows: Arie [*Arie v. Intertherm, Inc.,* 648 S.W.2d 142 (Mo.App.1983)] supports the conclusion that a unilateral undertaking of this nature creates the equivalent of a contract with those employees who come within its provisions and to whom it is made known even though mutuality in the usual contract sense is absent.

\* \* \* \* \* \*

In summary, we conclude the law to be that if an employer elects to establish policies in its relations with employees and publishes those policies in a document distributed to employees, the employer is contractually bound to observe those policies until they are modified or withdrawn.

Although the majority opinion in *Johnson* does not refer to *Enyeart I* or the *Arie* opinion upon which *Enyeart I* relied, the dissent in *Johnson* recognized that the majority *Johnson* opinion on the one hand and *Enyeart I* and *Arie* on the other hand are inconsistent and reach contrary results. 745 S.W.2d l.c. 665, footnote 1. A similar recognition appears in *Butcher v. City of Sikeston,* 683 F.Supp. 212 (E.D.Mo.1988) in footnote 2 at page 213 where it is said:

> Plaintiff's citation to *Arie v. Intertherm, Inc.,* 648 S.W.2d 142 (Mo.App.1983) was an accurate statement of Missouri law at the time plaintiff's brief was filed. The holding in *Johnson,* however, has effectively overruled *Arie* and other cases of its genre.

Plaintiff cites *Hinkeldey v. Cities Service Oil Company,* 470 S.W.2d 494 (Mo. 1971) as being closer to the facts of this case than *Johnson.* In *Hinkeldey,* a division of the Supreme Court held that a handbook revision providing for severance pay could be enforced against the employer. *Hinkeldey* may possibly be distinguishable on the ground that it involved a question of monetary remuneration rather than the limitations upon the right of the employer to discharge or procedures inextricably connected with and purporting to

limit that right. In support of such a distinction, see *Fink v. Revco Discount Drug Centers, Inc.,* 666 F.Supp. 1325, 1329, footnote 4 (W.D.Mo.1987). If *Hinkeldey* is not so distinguishable, so as to make it inapplicable to the present case, then the divisional opinion in *Hinkeldey* must yield to the banc decision seventeen years later in *Johnson.*

■ Inasmuch as under *Johnson* an employee handbook does not create a contract, no contractual rights can accrue thereunder to an employee as to procedure relating to discharge any more than a contract right can arise from such a handbook limiting the right to discharge itself. Contrary to plaintiff's contention, the handbook created no contractual right to plaintiff which can support its claim for damages for wrongful discharge.

## II.

### Law of the Case

The trial court expressly recognized its general obligation on remand to follow the decision rendered by this court on the first appeal, under the doctrine of law of the case. However, it further held that doctrine to be inapplicable here because: (1) there was no decision by the court of appeals on the merits and therefore plaintiff never acquired a vested interest in the court of appeals' determination; and (2) *Enyeart I* has been overruled by the subsequent decision of the Supreme Court in *Johnson.*

Plaintiff takes issue with both of those reasons given by the trial court for not following *Enyeart I.* It is however unnecessary to discuss the first reason given by the trial court, inasmuch as this branch of the case can be satisfactorily disposed of on the second reason given by the trial court.

In opposition to the trial court's reliance on *Johnson,* plaintiff argues that a trial court on remand is absolutely bound by the decision of the appellate court on the first appeal and lacks jurisdiction to do otherwise. Plaintiff takes the position that even if *Johnson* does have the effect of overruling *Enyeart I,* such a change in the law did not lessen the duty of the trial court to follow *Enyeart I.*

That argument by plaintiff is technically correct. His position finds authoritative support in *State ex rel. Curtis v. Broaddus,* 238 Mo. 189, 142 S.W. 340, 342 (Mo. 1911) which holds:

It will be perceived, however, that while this court reserves, as it must, the right to re-examine its former decision in the same case, upon the same state of facts, that right is not accorded to the lower court. If this court makes a mistake, either as to the law or the facts of the case, as may happen, inasmuch as the court is composed of human judges, it has the power—fortunate that it is so—to correct that mistake by reversing itself on a second appeal; but it by no means follows that the trial court or the Court of Appeals has the same right in this regard. On a point, once decided by this court, comes before either the circuit court or the Court of Appeals and further proceedings in the same case, neither of the court's last named has jurisdiction to overrule this court * * *

The same proposition has been recently restated by Judge Shangler of this court in *Davis v. J.C. Nichols Company,* 761 S.W.2d 735, 737 (Mo.App.1988) as follows:

The initiatives open to a trial court on remand are as rendered in the mandate and opinion of the appellate court [citing]. Where a remand is with directions, a trial court is bound to render judgment in conformity with the mandate [citing]. The trial court is without power to modify, alter, amend or otherwise depart from the appellate judgment. Its proceedings contrary to the directions of the mandate are 'null and void' [citing].

The *Davis* opinion goes on to hold at page 740 that the restriction upon the power of the trial court upon remand does not extend to the appellate court in the event of a second appeal. In that respect the *Davis* opinion states at page 740:

If circumstances arise that cast doubt on the correctness of the law of the case as established on appeal, our procedures en-

able a litigant to press the *appellate court* to depart from the mandate and opinion by motion for rehearing, motion to recall mandate, or by appeal from the judgment entered after remand [citing cases]. (Emphasis in the *Davis* opinion)

 Amplifying the last proposition just quoted from the *Davis* opinion, there is a well-established rule that the appellate court on a second appeal should not follow the law as declared in the decision on the first appeal if a change in the law has intervened between the time of the two appeals. *Johnson v. Thompson,* 251 S.W.2d 645 (Mo.1952); *Poe v. Illinois Central Railway Company,* 339 Mo. 1025, 99 S.W.2d 82 (Mo.1936); *Stephens v. Coca-Cola Bottling Company,* 232 S.W.2d 181 (Mo.App.1950). As shown under point I of this opinion, *Johnson* has changed the law so that the controlling rule is now contrary to that declared in *Enyeart I.* Whatever the views of this court were in 1985 or are now, this court must conform to the decision in *Johnson.*

This case is now here on a valid appeal, so that this court has opportunity and may appropriately evaluate its former decision in *Enyeart I* in light of *Johnson.* That evaluation yields the inevitable conclusion that *Johnson* has overruled *Enyeart I.* Regardless of the technical lack of power by the trial court to so declare, this court does have the power and should do so.

If the trial court had followed the strict letter of the doctrine of law of the case as explained in *Davis* and on that basis had permitted plaintiff to recover on the theory of contractual rights under the handbook, this court on an appeal by defendant would be under obligation to reverse because of the *Johnson* opinion. Rather than require a full trial as to which a reversal would be required if plaintiff received an award, it is much better for this court to sustain the summary judgment now, thus avoiding unnecessary time and expense to the parties and the wastage of valuable judicial time and resources at both the trial and appellate level.

Another approach also demonstrates the advisability of affirming the summary judgment as already rendered. Suppose this court should declare the effect of the *Johnson* opinion as overruling *Enyeart I* but nevertheless reverse in this case because of the technical lack of power by the trial court to so declare. Such decision on this appeal would establish a new law of the case and would encourage the defendant to file a new motion for summary judgment. Then the trial court would be required to follow the new law of the case and would have to grant a new summary judgment. All of that extra and unnecessary work and expense can be avoided by affirming the present summary judgment.

The summary judgment entered for defendant reached the right result. That judgment is affirmed.

All concur.