**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAUL PALMERIN,

     Plaintiff - Appellant,

v.

JOHNSON COUNTY, KANSAS
BOARD OF COUNTY
COMMISSIONERS,

     Defendant - Appellee.

No. 11-3386
(D.C. No. 09-CV-02579-CM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY, MURPHY,** and **GORSUCH**, Circuit Judges.

---

Johnson County says it fired Paul Palmerin for using a racial slur when referring to his coworkers. Mr. Palmerin says this was really just pretext, that the County wanted to get rid of him for reporting wrongdoing by his coworkers. In his complaint, Mr. Palmerin brought a variety of federal and state claims but by trial only a state law retaliation claim remained — and after trial the district court granted the County judgment on that claim too. On appeal Mr. Palmerin

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

challenges only this final ruling but it is one, in the end, we find hard to fault.

While Mr. Palmerin was an at-will employee, Kansas protected him as a matter of public policy from being terminated "for the good faith reporting of a serious infraction of . . . . rules, regulations, or the law pertaining to public health, safety, and the general welfare." *Palmer v. Brown*, 752 P.2d 685, 689-90 (Kan. 1988). Mr. Palmerin says he reported a number of infractions along these lines but we focus our attention on two examples which Mr. Palmerin picked as his best at oral argument and which suffice to illustrate why we believe we must affirm.

The first concerns hard hats. Mr. Palmerin claims one of his coworkers, Kevin Boggs, refused to wear a hard hat at a construction site and he (Mr. Palmerin) reported as much to his superiors. Even taking all this as true, however, we are unclear how Mr. Palmerin's complaint implicated a rule, regulation, or the law pertaining to public health, safety, and the general welfare. Mr. Palmerin suggests Mr. Boggs's failure to wear a hard hat violated OSHA regulations, but the County replies that local governmental entities are generally exempt from OSHA regulations (*see* 29 U.S.C. § 652(5)), and to this Mr. Palmerin offers no rejoinder.

Instead Mr. Palmerin retreats, suggesting that at the very least Mr. Boggs's failure to wear a hard hat violated policies set forth in the County's employee safety manual. The difficulty here is that Kansas has already held a private employer's "internal policies and guidelines" generally do *not* qualify as "rules,

2

regulations, or the law pertaining to public health, safety, and the general welfare." *See Herman v. Western Financial Corp.*, 869 P.2d 696, 704-05 (Kan. 1994). Neither do we see how the result might change when the employer happens to be a public rather than private entity. Internal policies directed solely at employees no more automatically concern *public* health, safety, and the *general* welfare when adopted by a public employer than when adopted by a private one. Indeed, the policy at issue here clearly sought to protect the safety of County employees, not County citizens generally. It is well accepted in other areas of law that a state stands in very different shoes when acting more like a private employer than in its sovereign capacity. *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410 (2006) (discussing public employee retaliation claims in the First Amendment context). The same general principle applies here.

The second incident concerns a tire changing machine. This time Mr. Palmerin reported Mr. Boggs for using a County tire machine when working on his own cars during his time off. Mr. Palmerin says this incident, if not the hard hat incident, surely implicated a law pertaining to public health, safety, and the general welfare because it involved the criminal deprivation of property, a violation of the Kansas code. *See* Kan. Stat. Ann. § 21-5803.

But even assuming (without deciding) that the conduct Mr. Palmerin reported indeed violated a Kansas law pertaining to public health, safety, or the general welfare, a last and insurmountable hurdle still remains. As he

3

acknowledged at oral argument, Kansas protects only the reporting of *serious* violations of rules, regulations or laws involving public health, safety, and the general welfare. *See also Palmer*, 752 P.2d at 690. The reason for this seriousness requirement no doubt arises from a desire to balance two competing public policy interests — the interest in preserving at-will employment and the interest in encouraging employees to report lawlessness — and the realization that public policy isn't advanced so much by protecting from dismissal employees who report trivia as it is by protecting those who unearth consequential wrongdoing. Though Kansas has yet to define the exact parameters of its seriousness requirement, other states have suggested that their own parallel provisions protect only employees who report violations of rules, regulations, and laws that courts would not let the parties "nullify" by their own agreement, *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 405-06 (Utah 1998), because their significance is "so substantial and fundamental that there can be virtually no question as to their importance for promotion of the public good," *Rackley v. Fairview Care Ctrs., Inc.*, 23 P.3d 1022, 1027 (Utah 2001).

Confident that Kansas's seriousness requirement entails a more or less similar sort of screening function, we agree with the district court that Mr. Palmerin's tire changing machine claim must fail. From the record we have, it is unclear exactly how often Mr. Boggs used County property but a few things are clear: no damage was done, County policy permitted employees to make *de*

4

*minimis* use of its property for their personal projects, Mr. Boggs's supervisor expressly granted him permission to make use of the tire changing machine, no one was ever reported to criminal authorities let alone prosecuted for theft, and it seems Mr. Palmerin at the time thought only an infraction of the internal County policy was involved (though, of course, he later argued in court a criminal law might apply too). It very well may be that Mr. Boggs's usage was more than *de minimis* as the County itself found, but given all these facts it's difficult to see how Mr. Boggs's conduct went so far that the County could not have "nullif[ied]" any potential claim of wrongdoing "by [its] own agreement." Put differently, Mr. Boggs might have exceeded the *de minimis* use policy but he did so by so little that we cannot say the failure to rectify it would have amounted to "so substantial and fundamental" a problem "that there can be virtually no question as to [the policy's] importance for promotion of the public good." *Rackley*, 23 P.3d at 1027.

Our holding on this score finds many analogs in states with retaliation laws similar to Kansas's. *See, e.g.*, *Harris v. City of St. Louis*, No. 10-CV-1392, 2011 WL 1885387, at *5 (E.D. Mo. May 18, 2011) (similar allegations do not "qualify as *serious* misconduct"); *Link v. K-Mart Corp.*, 689 F. Supp. 982, 985 (W.D. Mo. 1988); *Fox v. MCI Commc'ns Corp.*, 931 P.2d 857, 861-62 (Utah 1997). For his part, Mr. Palmerin replies that we should follow a different line of cases from courts that have allowed retaliation claims for reporting minor cases of theft. *See*

*Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 880 (Ill. 1981). But it does not appear retaliatory discharge cases in those states contain a seriousness requirement, *see Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009), so we do not see how we might.

Having said that much, we take care to emphasize what we do not say. We do not mean to suggest a violation of a *de minimis* use policy in some more aggravated fashion would fail to qualify for protection. Neither do we mean to identify some definitive and quantitative monetary threshold that must be met before Kansas's retaliation law comes into play when reporting cases of theft. Instead, we suggest only that on the facts presented it is difficult to conclude that there is "virtually no question" about the importance of the reported issue "for promotion of the public good."

Approaching the case from a different angle, Mr. Palmerin argues the County did not properly preserve its arguments in the district court. He notes that a party generally may not move for judgment after trial under Rule 50(b) unless it first moved for judgment as a matter of law under Rule 50(a) before the case was submitted to the jury. *See* Fed. R. Civ. P. 50(a) & (b). In this case, however, the County *did* move for judgment as a matter of law before the jury retired and thus did preserve the ability to pursue a motion for judgment after trial.

Mr. Palmerin acknowledges this but says the County's Rule 50(a) motion failed to specify which particular element of the retaliation claim the County

6

sought judgment on. And this failing, he says, is fatal to the County's ability to pursue a post-judgment Rule 50(b) motion along the lines it did. The district court, however, clearly understood the County's Rule 50(a) motion as challenging (and thus preserving a later Rule 50(b) challenge to) *all* elements of the retaliation claim and we see no basis for faulting its understanding. After all, "technical precision" is not required in Rule 50(a) motions; instead, we "liberally construe[] [a] party's motion," requiring only that the party adequately notify the court of the issues it is raising, something the district court plainly thought happened here. *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1114 (10th Cir. 2005). Besides, during the post-judgment Rule 50(b) proceeding in district court Mr. Palmerin himself failed to raise any complaint about the sufficiency of the County's Rule 50(a) motion to preserve the arguments it wished pursued for judgment after trial. And under our case law Mr. Palmerin's failure to do so was itself enough to forfeit his complaint. *See Therrien v. Target Corp.*, 617 F.3d 1242, 1250 n.2 (10th Cir. 2010).

Finally, Mr. Palmerin complains about the district court's evidentiary rulings at trial. The court did sustain a number of objections to questions that called for hearsay or a non-responsive answer. It also sustained other objections related to leading questions, misstated evidence, and the like. But at least in those few rulings Mr. Palmerin's appellate briefs identify and discuss in enough detail to permit our review, *see* 10th Cir. R. 28.1, we can discern nothing that rises to

7

the level of a reversible abuse of discretion.

The district court's judgment is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge